**In re E.I., a Child Alleged to be a Child in Need of Services.**

**No. 49A02–9406–JV–329.**

Court of Appeals of Indiana.

July 21, 1995.

---

504 ■ 

506 ■

Pamela Carter, Atty. Gen. of Indiana and Rebecca Bowman, Deputy Atty. Gen., Indianapolis, for appellant.

Michael A. Fleener, Child Advocates, Inc., Indianapolis and Cynthia Booth, Indianapolis, for appellee.

## OPINION

FRIEDLANDER, Judge.

The Indiana Department of Education (DOE), the Indiana Family and Social Services Administration (FSSA), and the Indiana Division of Mental Health (IDMH) appeal from an order adjudicating E.I. to be a *Child in Need of Services* (CHINS) and making E.I. a ward of FSSA. The appellants present the following restated issues for review:

I Did the trial court err in joining DOE, FSSA, and IDMH as parties under the CHINS statutory guidelines?

II Did the trial court err in awarding wardship of E.I to the FSSA?

III Did the trial court err in ordering each of the appellants to pay a portion of the costs for E.I.'s residential placement?

We reverse and remand.

1. The guardian ad litem also petitioned to join the Indianapolis Public Schools (IPS) as a necessary party. IPS was not joined as a party and is not a party to this appeal.

2. On November 9, 1993, after appellants filed their request for change of judge, but before the

An investigation conducted by the Marion County Office of Family and Children (MCOFC) revealed that E.I. was a thirteen-year-old autistic child who experienced significant developmental delays. MCOFC also determined that E.I.'s mother could not control him or provide a safe environment. On May 11, 1993, MCOFC filed a petition in Marion Superior Court, Juvenile Division, Judge James W. Payne, presiding, seeking authorization to institute a CHINS proceeding and requesting that E.I. be temporarily placed under the custody of MCOFC. A CHINS petition was filed on May 12, 1993. Also on May 12, a detention hearing was held, after which the court determined that E.I. should be temporarily placed under the custody and supervision of the Marion County Department of Public Welfare (MCDPW). E.I. was then admitted to Arbor Hospital.

On July 14, 1993, E.I.'s guardian ad litem filed separate motions to join DOE and FSSA (and IDMH, a division of FSSA) as necessary parties.[1] The guardian ad litem's request was based upon the contention that E.I. was "in need of residential services, mental health services, and special education services" and that "[t]he delivery of these services will require close coordination of an integrated service provider network." *Record* at 46, 52. The Attorney General filed separate objections on behalf of both FSSA and DOE, contending that FSSA and DOE were not necessary parties and that the guardian ad litem had failed to exhaust his administrative remedies. On October 6, 1993, the court granted the guardian ad litem's motion and joined DOE and FSSA as parties.

FSSA and DOE thereafter filed a Trial Rule 76 motion for change of venue from the judge. On November 24, 1993, the Indiana Supreme Court issued a Permanent Writ of Mandamus and Prohibition, ordering the trial judge to grant the motion for change of judge.[2] On December 13, 1993, the parties

court had ruled upon same, the trial judge issued the following order:
"Comes now the Court and having reviewed the file, notes that several Motions have been filed. Before the Court can rule on this Motion, the Court notes that the Attorney General has filed an Appearance for [FSSA] and [IDE].

agreed to the appointment of a replacement judge. On February 23, 1994, FSSA and DOE filed respective motions to dismiss pursuant to Rule 12(B)(6) of the Indiana Rules of Trial Procedure. On February 25, 1994, following a hearing, the court denied the February 23 motions to dismiss, and ordered that E.I. be made a ward of FSSA. The court also ordered that the costs for E.I.'s residential placement be apportioned among DOE, FSSA, and IDMH.

## I

■ The issues presented in this appeal require an examination of the CHINS statutory scheme, particularly with respect to the participation and responsibilities in CHINS proceedings of several state agencies. Our research reveals that this question has not previously been addressed by an Indiana court. Where a statute has not previously been construed, the interpretation is controlled by the express language of the statute and the rules of statutory construction. *Loza v. State* (1975), 263 Ind. 124, 325 N.E.2d 173. The court is required to determine and effect the legislative intent underlying the statute, and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. *Superior Const. Co. v. Carr* (1990), Ind., 564 N.E.2d 281. In the instant case, we must view the CHINS statutory scheme in its entirety and determine how the legislature intended the system to operate with regard to the issues presented by the appellants. *See Merimee v. Brumfield* (1979), Ind.App., 397 N.E.2d 315; *Woods v. State* (1957), 236 Ind. 423, 140 N.E.2d 752.

The Court notes that there is a conflict, if not actual perceived, but in this court's opinion an actual conflict in representing both parties and the Court instructs the Attorney General that it must do the following:

1. Identify which of the parties it intends to present [sic] because of the conflict that exists.

2. Identify by statement to the Court whether or not it has had communication of a confidential nature with [FSSA] and with [IDE] which may preclude the Attorney General from representing either party.

In other words, if the Attorney General's Office has had communication with both of the parties that would cause the attorney/client privilege to be breached, the Attorney Gener-

## A.

The appellants contend that the court erred in joining them as parties, arguing that Ind.Code 31-6-4-10(g) sets out an exclusive list of the parties in a CHINS action, and the list does not include the state agencies in question. IC 31-6-4-10(g) states:

"The child, the child's parents, the county office of family and children, and the guardian ad litem or court appointed special advocate are parties to the proceedings described in this article and have all rights of parties under the Indiana Rules of Trial Procedure."

■ We recognize that, in some cases, where a statute enumerates several items on a list, items not named are presumed to be excluded. *See City of Peru v. Utility Service Bd. of City of Peru* (1987), Ind.App., 507 N.E.2d 988. However, the mere fact that a list is set out does not necessarily invoke the maxim. This maxim is not to be blindly applied in all instances, especially where it produces an interpretation which defeats the clear legislative intent. *Sue Yee Lee v. Lafayette Home Hospital, Inc.* (1980), Ind.App., 410 N.E.2d 1319.

■ There is nothing in the language of IC 31-6-4-10(g) indicating that the list of parties contained therein is intended to be exclusive, such as insertion of the term "only" at the beginning of the subsection. Moreover, were we to ascribe to IC 31-6-4-10(g) the meaning which the appellants urge, it would preclude the joinder of such parties as guardians, custodians, foster parents, or

al's Office will not be allowed to represent either party.

The Attorney General is ordered to provide to the Court a written report by 4:00 p.m. on November 12, 1993, as to the above statements. Thereafter, the Court will rule on the currently pending Motions. The Court, however, will retain any emergency matters which may include the services currently being offered to [E.I.]."

*Record* at 112.

Appellants thereafter petitioned for a writ of mandamus and a writ of prohibition, which our supreme court granted. The court ruled that the trial judge retained jurisdiction only to vacate the November 9 order, and to grant the motion for change of judge.

other relatives of the child. We will avoid a construction which accomplishes such an illogical result. *See Carr, supra.* Rather than limit the parties which may participate, we conclude that the significance of IC 31–6–4–10(g) is its delineation of those which *must* be parties in a CHINS action and further conclude that the list is not exclusive.

### B.

The trial court permitted the joinder of appellants pursuant to the guardian ad litem's T.R. 19(A)(1) request. T.R. 19(A)(1) states "A person who is subject to service of process shall be joined as a party in the action if: (1) in his absence complete relief cannot be accorded among those already parties." Appellants argue that the guardian ad litem failed to establish the requisite elements for joinder of parties pursuant to T.R. 19(A)(1).

The guardian ad litem argues upon appeal that the T.R. 19(A)(1) joinder was necessary and therefore proper because:

> "[d]ue to the complexity of E.I.'s situation and the need for close coordination of integrated service providers (which included agencies under the umbrella of [FSSA]), [FSSA] was joined to ensure E.I. a just resolution of the CHINS proceeding and resultant services to him." Appellee's Brief at 12.

The merits of the joinder reside, if at all, in the validity of the contention that the appellants' presence was necessary because of the "need for close coordination of integrated service providers", including agencies under the umbrella of FSSA. This determination, in turn, requires an examination of the CHINS procedure as set out by statute.

If an intake officer, who is employed by the county office of family and children, has reason to believe that a child is a child in need of services, a preliminary inquiry is conducted to make the determination. IC 31–6–1–8; IC 31–6–1–19; IC 31–6–4–8. "The intake officer shall send to the prosecutor or the attorney for the county department a copy of the preliminary inquiry. He

shall decide whether to file a petition, informally adjust the case, refer the child to another agency, or dismiss the case." IC 31–6–4–8(c). IC 31–6–4–10(a) further provides that the prosecutor or the attorney for the county department "shall represent the interests of the state at the proceeding and at all subsequent proceedings on the petition."

After a petition has been filed, the court must determine whether the child's representative, or the parent, guardian, or custodian admits or denies the allegations contained in the petition. IC 31–1–6–4–13.5. If the allegations are not admitted, the court must conduct a fact-finding hearing to determine the accuracy of the petition. If the child or the child's representative, or the parent, guardian, or custodian admits the allegations, or if the court determines the allegations to be true following a fact-finding hearing, the court enters judgment that the child is a child in need of services, orders a predispositional report, and schedules a dispositional hearing. *Id.;* IC 31–6–4–14.

The predispositional report contains a recommendation for the care, treatment, or rehabilitation of the child. IC 31–6–4–15. The caseworker who prepares the report is a "child welfare worker of the county office of family and children." [3] IC 31–6–1–8. Following a CHINS adjudication, the court conducts a dispositional hearing at which it considers treatment alternatives and enters a dispositional decree containing what it determines to be the best alternative. Among the relevant treatment alternatives which the court may order are the following:

> "(e) The juvenile court may:
>
> (1) order supervision of the child by the probation department or the county department;
>
> (2) order the child to receive out-patient treatment at a social service agency, psychological, psychiatric, medical, or educational facility, or from an individual practitioner;
>
> (3) remove the child from his home and place him in another home or shelter care facility (placement under this subdivision includes authorization to control

---

**3.** IC 31–6–4–15(a) also provides that "[a]lternative reports may be prepared by the child or his parent, guardian, guardian ad litem, or custodian for further consideration."

and discipline the child)." IC 31–6–4–16(e).

The cost of services is to be paid by the county council. IC 31–6–4–18(a).

 A principle consistently reflected in the CHINS scheme is that the State is represented throughout the CHINS proceedings by the county office of family and children. The county prosecutor or the attorney for the relevant county department is first notified of CHINS petitions and represents the interest of the State at all subsequent proceedings on the petition. Once a child has been determined to be a child in need of services, a caseworker for the county welfare department prepares a predispositional report containing treatment recommendations. Finally, the county council is responsible for bearing the costs of court-ordered treatment. The scheme clearly reflects a legislative determination that CHINS cases are best handled at the county level on a county-by-county basis.

██ The scheme enacted by the legislature does not contemplate the active participation of state administrative agencies in a CHINS action. Rather, the system is designed so that the State's interface with the affected parties, the treatment and service providers, and the courts is accomplished at the county office level. The advantages of such an arrangement are obvious, and include the county's ability to respond with greater dispatch and the county's familiarity with local treatment providers. A cursory examination of the relationship between the FSSA and its umbrella agencies confirms this conclusion.

FSSA is an agency created for the purpose of administering state family and social services programs, and is the administrative agency in charge of several divisions, including IDMH. *See* IC 12–21 *et seq.* FSSA's duties as an administrative agency with regard to the several divisions under its umbrella are reflected in the following description of the duties of the secretary of FSSA:

"(a) The Secretary, through the offices, is responsible for coordinating the provision of technical assistance to each division for the following:

(1) Compiling program budgets for each division.

(2) Fiscal performance of each division.

(3) Management and administrative performance of each division.

(4) Program performance of each division.

(b) The secretary, through the offices, is accountable for the following:

(1) Resolution of administrative, jurisdictional, or policy conflicts among the divisions.

(2) The coordination of the activities of each division with other entities including the general assembly and other state agencies.

(3) Coordination of communication with the federal government and the governments of other states.

(4) Development and ongoing monitoring of a centralized management information system and a centralized training system for orientation and cross-training.

(5) The overall policy development and management of the state Medicaid plan under IC 12–15.

(6) Liaison activities with other governmental entities and private sector agencies." IC 12–8–1–8.

The FSSA is also responsible for coordinating its programs with programs offered by the State Department of Health and cooperating with federal agencies, particularly with respect to aiding persons who qualify for federal social security assistance.

IDMH is a division of FSSA and is charged with administrative oversight of several bureaus, one of which is the Children's Mental Health Bureau. The Children's Mental Health Bureau's functions are generally administrative, planning, and coordinating in nature. Included is responsibility for "[coordinating] with the director of the division of family and children [another division of FSSA] on matters concerning children with mental health needs." Ind.Code 12–22–3–4(8). IDMH's involvement in a CHINS proceeding arises pursuant to its general duty to: 1) plan, research, and develop programs and methods for educating and treating emo-

tionally disturbed children; 2) coordinate Indiana governmental services and programs relating to such children; and 3) administer state-supported services concerned with such children. IC 12–21–5–2. Payment of fees incurred for mental health treatment of a child is to be made by the county under IC 31–6–4–18. IC 12–26–8–7.

■ In summary, FSSA and IDMH are governmental entities created for the purpose of administering certain programs, including programs which provide care and treatment of children determined to be children in need of services. Indiana's statutory scheme contemplates that in CHINS proceedings the State is represented by county offices of subsidiary divisions and bureaus of FSSA and IDMH. It thus becomes clear that IDMH, like FSSA, is charged primarily with administrative responsibilities for several programs, including programs overseeing mental health treatment of children determined to be children in need of services. The statutory scheme set out above reflects that, as with FSSA, IDMH was not intended to undertake an active role in an individual CHINS proceeding at the county level. Therefore, we conclude that FSSA and IDMH should not be named as parties in a CHINS proceeding absent unusual circumstances requiring the presence as parties of the policy makers and administrators of the programs implicated in a CHINS proceeding.

■ Having reviewed the CHINS petition pertaining to E.I., the proceedings in this particular case, and the dispositional decree, we find no contested issue whose resolution required the presence of FSSA, IDMH, and DOE as parties. Moreover, the agreed entry setting out E.I.'s treatment plan, which was negotiated among E.I.'s mother, E.I.'s guardian ad litem, and MCOFC, did not require anything of FSSA, IDMH, or DOE. There simply is no evidence to support the finding that FSSA, IDMH, and DOE were necessary parties. Accordingly, the trial court erred in granting the guardian ad litem's T.R. 19(A) motion and joining FSSA, IDMH, and DOE as parties.

## II

The appellants contend that the trial court erred in awarding wardship of E.I. to FSSA.

The trial court accepted the agreed entry and made E.I. a ward of FSSA, with services to be provided by MCOFC. The guardian ad litem contends that the trial court's decision to award wardship to FSSA was permissible because IC 31–6–4–15.4(a)(4) gives the juvenile court the power to "award wardship to any person or shelter care facility...." The guardian ad litem points out that "person" in the Juvenile Code is defined as "a human being, corporation, limited liability company, partnership, unincorporated association, or governmental entity." IC 31–6–1–24. Because FSSA is a governmental entity and thus a "person" within the meaning of IC 31–6–4–15.4(a)(4), the guardian ad litem contends, the juvenile court had authority to make E.I. a ward of FSSA.

■ We agree with the guardian ad litem that the appointment of a governmental entity, *any* governmental entity, is authorized under the IC 31–6–4–15.4(a)(4). However, it does not follow that the appointment of a particular governmental entity is proper in a particular case. Placing E.I. under the wardship of FSSA created a direct relationship between FSSA and E.I. which is continuing in nature. *See Matter of S.T.* (1993), Ind.App., 621 N.E.2d 371. FSSA is an agency created to perform certain functions which are administrative in nature and FSSA was structured in such a way as to perform those specified functions. The structure of an agency conceived to administer statewide programs appears to be incompatible with active involvement at the county level in an individual CHINS proceeding. Moreover, the legislature created in each Indiana county an office of family and children for this purpose. It is these individual county offices, not the FSSA, which were designed to administer care and treatment of children in need of services on a county-by-county basis. *See* IC 12–19–1–10((a)(1)(A).

■ While governmental entities *may* be assigned wardship of a child adjudicated as a CHINS under IC 31–6–4–15.4(a)(4), it does not follow that the juvenile court enjoys

unbridled discretion to place a child in need of services under the wardship of any governmental entity it chooses. As the appellants aptly note, "[i]f that [were] true, the juvenile court could award wardship of a child in need of services to the Bureau of Motor Vehicles, the Alcoholic Beverage Commission, the governor or any other governmental entity." Appellants' Brief at 19. We conclude that a juvenile court may place a child under the wardship of a governmental entity only if the entity is appropriate for such a function. "Appropriateness" in this context is determined by examining the entity's resources and by evaluating the entity's purpose, power, and function, as set out in the relevant statutory materials.

Counsel for FSSA stated at oral argument before this court that FSSA is not structured or equipped, either from a personnel or a financial resources viewpoint, to effectively monitor and maintain wardship of a child in need of services. This assertion is consistent with the purpose and function of the FSSA as reflected in Title 12. Title 12 indicates that the tasks FSSA was intended to perform consist entirely of administrative activities such as budgeting and fiscal management, monitoring and assessing the performance of the various divisions under its umbrella, resolution of interdivisional conflicts, developing and monitoring management and information training systems, and providing liaison activities with other governmental agencies. An agency designed to perform such functions is not incidentally staffed, structured, or equipped to perform the duties associated with accepting wardship of a child in need of services. Moreover, were we to agree that making E.I. a ward of FSSA was appropriate, we would invite, or at the least create a legal basis for, similar actions in other Marion County CHINS cases and CHINS cases in juvenile courts across the state. Leaving aside the question of FSSA's ability to effectively perform a single wardship, it cannot seriously be disputed that the strain on FSSA's resources which would result from multiple wardships would be serious indeed.

The statutory CHINS scheme reflects that the legislature intended that if wardship of a child in need of services should be given to any governmental entity, it should be given to the appropriate county office of family and children. It logically follows that the various county offices are best staffed and equipped to perform this function. This, in combination with the fact that FSSA was intended and therefore structured and staffed to perform functions wholly dissimilar from monitoring wardships, leads us to conclude that FSSA is not an appropriate governmental entity to receive wardship of E.I. Accordingly, the order placing E.I. under the wardship of FSSA is reversed.

### III

After a November 1, 1993 pretrial hearing the trial court issued an order containing the following:

"The Marion County Office of Family and Children, the Indiana Division of Mental Health, the Indiana Family and Social Services Administration, Indianapolis Public Schools and Department of Education are ordered to apportion costs among themselves, within thirty (30) days, including 'start-up' costs for Christole, Inc., and to file a report with the Court setting forth the apportionment." *Record* at 4.

Appellants DOE, IDMH, and FSSA contend that the trial court erred in ordering them to pay a portion of the costs.

The statutory scheme for paying the cost of services ordered by a juvenile court in a CHINS proceeding is set out in IC 31–6–4–18. Therefore, a juvenile court's order regarding payment for services must abide by the statute's mandates. When determining whether the court's order complied with the statutory mandates, we construe the meaning of the statute by interpreting the statute as a whole and giving words their common and ordinary meaning. *Matter of Lawrance* (1991), Ind., 579 N.E.2d 32.

IC 31–6–4–18(a) states: "The cost of any services ordered by the juvenile court for any child, or the child's parent, guardian, or custodian, and the cost of returning a child under IC 31–6–10 shall be paid by the county. The county council shall provide sufficient funds to meet the court's requirements." The mandatory "shall" em-

ployed in the statute limits the court's discretion and does not permit allocation of responsibility for payment of costs associated with CHINS services to any source other than the county council.[4] *See United Rural Elec. Membership Corp. v. Indiana & Michigan Elec. Co.* (1990), Ind., 549 N.E.2d 1019.

■ The guardian ad litem's argument upon this issue focuses more upon the right to services than upon identification of the proper payor:

"There is no statutory or case law basis for the denial of these services in Indiana law. To deny these services to E.I. because he is a Child in Need of Services would be discriminatory and in violation of the Indiana and Federal constitution [sic]." Appellant's Brief at 26.

The right to receive particular services is not an issue in this case. IC 31–6–4–18 states that the county council "shall" pay the costs of "any" services ordered by the juvenile court. As the parties acknowledged at oral argument, the juvenile court is the final arbiter of the appropriate treatment for a child adjudicated CHINS, choosing from among alternatives presented by the parties, or fashioning its own treatment plan.

■ The guardian ad litem asserts that the court did not order the appellants to pay a portion of the costs of E.I.'s treatment, but rather "order[ed] the agencies to report as to how the cost of the service would be proportioned" [sic]. Appellant's Brief at 27. To the contrary, the court's order directed that the costs of treatment for E.I. be apportioned among FSSA, DOE, IDMH, and MCOFC. A court-ordered apportionment of costs among the four entities is the equivalent of an order to each to pay a portion of the total cost, although the court allowed the parties to determine the proportionate share that each would pay.

■ IC 31–6–4–18(a) provides that the county council shall pay the cost of any treatment or services ordered by the court. Again, the use of the mandatory "shall" indicates that, with one exception identified elsewhere in IC 31–6–4–18, a court is without discretion to order any party other than the county council to pay the cost of services. *United Rural, supra.* The lone exception is that, under certain circumstances, a court may order that the county be reimbursed by the child's parent or guardian of the child's estate. That exception is irrelevant here. In the instant case, MCOFC was the sole entity which bore the statutory burden of paying the costs of services ordered for E.I. by the juvenile court. Therefore, the court erred in ordering that the costs also be apportioned among FSSA, DOE, and IDMH.

The judgment is reversed and this cause is remanded with instructions to dismiss FSSA, DOE, and IDMH as parties, to remove E.I. from the wardship of FSSA, and to modify the order concerning payment of costs of services consistent with the principles expressed in this opinion.

SULLIVAN and NAJAM, JJ., CONCUR.

---

4. We note that E.I. is in need of special education services. A child need not be adjudicated CHINS in order to receive such services. Rather, 20 U.S.C. 1400 provides that special education services must be made available at no cost to a child or his parents. Funding for special education programs is drawn from a combination of federal, state, and local sources. **511**

I.A.C. 7–12–5 provides that, in addition to funds it may receive from the county, a local special education service provider may apply to the Department of Education for additional funding for alternative or "wraparound" services. Eligibility for such funding is based upon need and is unaffected by an adjudication that a child is a child in need of services.