Lieu B. HOANG, Appellant–Defendant,

v.

JAMESTOWN HOMES, INC., and PGPM, Inc., Appellees–Plaintiffs.

No. 02A05–0108–CV–344.

Court of Appeals of Indiana.

May 31, 2002.

Lieu B. Hoang, Fort Wayne, IN, Appellant Pro Se.

Robert D. Moreland, Karen T. Moses, Baker & Daniels Fort Wayne, IN, Attorneys for Appellees.

## OPINION

SHARPNACK, Judge.

Lieu B. Hoang brings this interlocutory appeal of the small claims court's denial of his motion to correct error. Hoang raises five issues, which we consolidate, reorder, and restate as:

1. Whether the small claims court had jurisdiction over the possessory action between Hoang and Jamestown Homes, Inc. ("Jamestown");

2. Whether the small claims court abused its discretion when it bifurcated the proceedings on Jamestown's complaint for ejectment of Hoang from the proceedings on Hoang's complaint against PMPG, Inc. ("PMPG") for damages;

3. Whether the small claims court's order ejecting Hoang from Jamestown was clearly erroneous; and

4. Whether the small claims court properly followed the statutory procedures for ejectment.

We affirm and remand.

The facts most favorable to Jamestown follow. Jamestown owns a cooperative housing project, which is managed by PMPG. On August 10, 1976, Hoang and his mother signed a "Subscription Agreement" with Jamestown. Appellant's Appendix at 21–22. The Subscription Agreement provided that Hoang and his mother would "subscribe for membership in Jamestown" by paying a "$140.00 Subscription Price" and a "$136.00 Indemnity Deposit." *Id.* at 21. Hoang and his mother received a "Membership Certificate" for Jamestown on August 10, 1976. *Id.* at 33–34. Then, after Hoang's mother passed away, Hoang retained the membership certificate and signed an "Occupancy Agreement" with Jamestown on January 6, 2000. *Id.* at 10–20. Pursuant to the Articles of the Occupancy Agreement, Jamestown conducts biannual inspections of each housing unit.

When Jamestown attempted to inspect Hoang's unit in September of 2000, they discovered that Hoang had changed the lock to the back door of his unit and that the front door was bolted shut. Jamestown sent a letter to Hoang to inform him that he could change the lock, but he had to give Jamestown a key to enter his unit for inspections. Eventually Jamestown was able to enter and inspect the unit; however, it was only able to inspect the first floor of the unit because boxes blocked access to the stairs.

On January 15, 2001, Jamestown sent a letter to all of its members to inform them that maintenance was again going to begin internal inspections. When Jamestown went to Hoang's unit, Jamestown found that it still did not have a working key to the back door lock that Hoang had changed in 2000. In addition, Jamestown had a front door key that worked, but the front door was blocked shut by a piece of wood propped against the stairway. Consequently, Jamestown sent a letter to Hoang on January 18, 2001 informing him that it was unable to inspect his unit because the locks had been changed and that it needed working keys to the unit by January 24, 2001. On January 25, 2001, Jamestown sent a letter to Hoang to inform him that his inspection was rescheduled, per his request, for February 1 at 10:00 a.m. and that access to his unit was expected at that time.

On February 1, 2001, the maintenance workers were unable to enter the back door because they still did not have the correct key and were unable to enter the front door because it was again blocked or bolted from the inside. On February 16, 2001, Jamestown's attorney informed Hoang via certified mail that if Hoang did not allow Jamestown to inspect his apartment, then Jamestown would consider Hoang in breach of the Occupancy Agreement and would have him evicted. On March 19, 2001, Jamestown sent a letter to Hoang informing him that he was scheduled for inspection at 1:30 p.m. on both March 23 and March 26. In addition, the letter informed him that Jamestown needed a correct key to his back door pursuant to the Occupancy Agreement. Nevertheless, Jamestown was unable to gain access to Hoang's unit for inspection on either March 23 or 26.

On March 30, 2001, Hoang finally allowed Jamestown representatives to enter his unit for the inspection. However, they were not permitted to inspect two of the three upstairs bedrooms. Rather, Hoang had padlocked closed one of the bedroom doors and had blocked access to the other

bedroom door by piling large amounts of personal property in front of the door.

On April 4, 2001, Jamestown filed a claim in Allen Superior Court, Small Claims Division, requesting ejectment of Hoang from Jamestown based upon his violation of the Occupancy Agreement. In response, Hoang filed a claim for damages against PGPM. At some point prior to a hearing on the merits, the small claims court bifurcated the proceedings on Jamestown's claim for ejectment from Hoang's claim for damages.

The small claims court held a trial on the merits of Jamestown's claim for ejectment of Hoang. On April 23, 2001, the small claims court entered judgment for Jamestown and ordered Hoang to vacate the premises within seven days of receiving the order. On May 1, 2001, Hoang filed a motion to correct error. On May 8, 2001, because the sheriff had already arrived at Hoang's unit to evict him, the small claims court denied Hoang's request for a stay of ejectment. On June 26, 2001, the small claims court denied Hoang's motion to correct error.

## I.

The first issue is whether the small claims court had jurisdiction over the possessory action between Hoang and Jamestown. Hoang provides two arguments for why the small claims court did not have jurisdiction over this action. First, Hoang argues that neither Ind.Code § 33–4–3–7(2) nor Ind.Code § 33–5–2–4(b)(2) gives the small claims court "subject matter jurisdiction over possessory actions between [a] cooperative housing corporation and its member." Appellant's Brief at 13. Second, Hoang argues that his $97,528.00 vested interest in his housing unit exceeds the $6,000.00 jurisdictional limit of the small claims court. We will address each of these arguments separately.

 Hoang's first argument is that the small claims court did not have the statutory authority to hear possessory actions between a cooperative housing corporation and its member. Whether a court has the authority to hear a class of cases is a question of the court's subject matter jurisdiction. *Dixon v. Siwy*, 661 N.E.2d 600, 606 n. 10 (Ind.Ct.App.1996). To have subject matter jurisdiction, either the Indiana Constitution or a statute must confer authority upon a court. *Santiago v. Kilmer*, 605 N.E.2d 237, 240 (Ind.Ct.App. 1992), *reh'g denied, trans. denied.* If a court does not have subject matter jurisdiction, any judgment that it renders is void. *Id.* at 239. Because void judgments may be attacked directly or collaterally at any time, the issue of subject matter jurisdiction cannot be waived and may be raised at any point by a party or by the court sua sponte. *Id.* at 239, 240. Because the authority granted by a statute is a question of law, we review this argument de novo. *See Clark v. Madden*, 725 N.E.2d 100, 104 (Ind.Ct.App.2000).

Hoang claims that neither Ind.Code § 33–4–3–7(2) nor Ind.Code § 33–5–2–4(b)(2) gave the small claims court subject matter jurisdiction over possessory actions between Jamestown and himself. Ind. Code § 33–4–3–7 defines the jurisdiction of the small claims docket of Indiana's circuit courts. *See* Ind.Code § 33–4–3–7. Ind. Code § 33–5–2–4 defines the jurisdiction of the small claims docket of Indiana's superior courts. *See* Ind.Code § 33–5–2–4. Because the small claims court at issue was part of the Allen Superior Court, we need not address the applicability of Ind. Code § 33–4–3–7.

The applicable statute, Ind.Code § 33–5–2–4, contains two subsections. Subsection (b) controls the jurisdiction of small claims courts in any "county having a population of more than three hundred thou-

sand (300,000) but less than four hundred thousand (400,000)." I.C. 33–5–2–4(b). Subsection (a) applies to small claims courts in all counties that do not meet the population requirements of subsection (b). According to the 2000 United States Census, Allen County's population was three hundred thirty one thousand, eight hundred forty-nine (331,849). STATS Indiana, *Allen County Profile, at* http://www.stats.indiana.edu/pro-files/pr18003.html (last visited Feb. 27, 2002). Consequently, the pertinent portion of Ind.Code § 33–5–2–4 is subsection (b).

The remaining portions of Ind.Code § 33–5–2–4(b) provide:

The small claims docket has jurisdiction over the following:

(1) Civil actions in which the amount sought or value of the property sought to be recovered is not more than six thousand dollars ($6,000). The plaintiff in a statement of claim or the defendant in a counterclaim may waive the excess of any claim that exceeds six thousand dollars ($6,000) in order to bring it within the jurisdiction of the small claims docket.

(2) Possessory actions between landlord and tenant in which the rent due at the time the action is filed does not exceed six thousand dollars ($6,000).

(3) Emergency possessory actions between a landlord and tenant under [Ind.Code § ] 32–7–9.

Hoang claims that the possessory action between Jamestown and himself does not fall under the second category listed in this statute because Jamestown is not a "landlord" and he is not a "tenant." To support his argument, Hoang cites *Cunningham v. Georgetown Homes, Inc.,* 708 N.E.2d 623 (Ind.Ct.App.1999), wherein we discussed the nature of the relationship between a cooperative housing project,

Georgetown, and its member, Cunningham, and discussed Georgetown's possible remedies for Cunningham's breach of the occupancy agreement. *Id.* at 625–627. In *Cunningham,* we explained:

Cooperative housing plans are *sui generis:* they are often referred to as "legal hybrids" because they contain elements of both property ownership and leasehold. In the typical cooperative housing situation, the member purchases stock in a non-profit cooperative association which owns or leases the real estate. The member will also execute a proprietary lease or occupancy agreement with the cooperative association, thereby acquiring the exclusive right to occupy a particular unit within the cooperative community. This occupancy agreement contains the rights of the members as well as rules and conditions of the community.

\* \* \* \* \*

Absent direction from our General Assembly, we decline to attempt to fit Cunningham's interest vis-à-vis Georgetown into either a landlord-tenant category or a property ownership category; she is neither the owner of the real estate nor is she a tenant of Georgetown, Inc.

\* \* \* \* \*

Because we conclude that Cunningham is neither an owner nor a tenant of the real estate, we hold that neither statutory foreclosure nor forfeiture through eviction is an appropriate remedy to protect the interests of both parties. Rather, because the relationship is a legal hybrid, we think it appropriate that the remedy as well be of a hybrid nature. First, although it was not correctly utilized in this case, we find that ejectment, pursuant to I.C. 32–6–1.5–1, *et seq.* (Burns Code Ed. Repl.1995), is

an appropriate remedy for removing a violating member from possession of a unit in a cooperative community. However, as well, we caution the trial court to remember that Cunningham does have a vested interest in relation to the unit, and she cannot be forced to simply forfeit that interest in the event that the court concludes in its final judgment that Cunningham did indeed breach the provisions of the Occupancy Agreement. Instead, the trial court may direct proceedings for the sale of Cunningham's interest which will insure that her rights are adequately protected.

*Id.* at 626–627 (emphasis in original). Hoang claims that this language prohibits small claims courts from hearing possessory actions between cooperative housing projects and their members because they are not landlords and tenants. We disagree.

Our primary purpose when interpreting a statute is to give effect to the intent of the legislature that passed the statute. *Guzman v. AAA Auto Rental,* 654 N.E.2d 838, 840 (Ind.Ct.App.1995). As we give effect to the intent of the legislature, we must construe the statute to prevent absurdity. *In re E.I.,* 653 N.E.2d 503, 507 (Ind.Ct.App.1995). We examine the statute as a whole, and the legislative intent ascertained from the whole takes precedence over the strict meaning of any word. *Ind. Patient's Comp. Fund v. Anderson,* 661 N.E.2d 907, 909 (Ind.Ct.App.1996), *trans. denied.*

Our supreme court has previously noted that the legislative intent when passing laws related to small claims courts was "to establish a more efficient and more uniform judicial system throughout the State." *In re Public Law No. 305 and Public Law No. 309 of Indiana Acts of 1975,* 263 Ind. 506, 522, 334 N.E.2d 659, 667 (1975). Moreover, "[s]mall claims courts and the small claims divisions of general jurisdiction courts are intended to be places where justice may be dispensed inexpensively and promptly." *Bowman v. Kitchel,* 644 N.E.2d 878, 879 (Ind.1995). In fact, each year, small claims proceedings decide two hundred fifty thousand cases that would otherwise have to wait on the docket of a plenary court. *See id.*

■ Ind.Code § 33–5–2–4(b)(2) gives Allen Superior Court's Small Claims Division jurisdiction over "[p]ossessory actions between landlord and tenant in which the rent due at the time the action is filed does not exceed six thousand dollars ($6,000)." Clearly, the ejectment action that we required cooperative housing projects to use to enforce their occupancy agreements in *Cunningham* is a "possessory action." *See* BLACK'S LAW DICTIONARY 516 (6th ed. 1990) ("Ejectment is an action to restore possession of property to the person entitled to it."). The question, then, is whether the possessory action is between a landlord and a tenant. Our language in *Cunningham* about the "hybrid" nature of the relationship between a cooperative housing project and its member came in the context of deciding what type of action must be brought to remove a member from a cooperative housing unit. *Cunningham,* 708 N.E.2d at 626–627. We held that the member should not be evicted without the protections afforded by the ejectment statutes because the member's interest is greater than the typical tenant's interest in a landlord's property. *Id.* However, that holding and our language referring to the relationship as a "hybrid" do not lead us to believe that Jamestown and Hoang are no longer "landlord" and "tenant" for purposes of jurisdiction under Ind.Code § 33–5–2–4(b)(2). The legislature intended small claims courts to be a place where parties could swiftly resolve possessory claims where the rent due was less than $6,000.

*See Bowman,* 644 .N.E.2d at 879; I.C. § 33–5–2–4(b)(2). To hold that Jamestown could not sue Hoang in small claims court because of the "hybrid" nature of their relationship could be contrary to that legislative intent. Consequently, because the parties are sufficiently like landlord and tenant for the purposes of jurisdiction, ejectment actions between cooperative housing projects and their members may be brought in small claims court pursuant to Ind.Code § 33–5–2–4(b)(2).

■ Hoang's second argument regarding jurisdiction is that the small claims court did not have jurisdiction because the amount of money in question exceeded the limits provided by the statute. Specifically, Hoang claims that he had a ninety-seven thousand, five hundred twenty-eight dollar ($97,528) vested interest in his Jamestown unit and that, therefore, his damages would exceed the $6,000 jurisdictional amount. Contrary to Hoang's position, this court has previously held that the fact that a party's damages may be larger than the jurisdictional limit does not prohibit a small claims court from having jurisdiction to decide the case. *Meyers v. Langley,* 638 N.E.2d 875, 877 (Ind.Ct.App. 1994). Rather, by filing the claim or counterclaim in small claims court, a party waives recovery of any amount over the jurisdictional limit. *See id.; see also* I.C. § 33–5–2–4(b)(1). Therefore, if Hoang was concerned about his alleged $97,000 vested interest in Jamestown, then Hoang should have filed his counterclaim on the plenary docket of the Allen Superior Court and moved for the two causes of action to be consolidated in that court. *See* Allen County Small Claims Local Rule 6(A). In addition, as Hoang did not ever mention this alleged vested interest to the small claims court, we fail to see how that court could have committed error by not considering that alleged interest. *See, e.g., Stout v. Kokomo Manor Apartments,* 677 N.E.2d 1060, 1067 (Ind.Ct.App.1997).

Both of Hoang's jurisdictional arguments fail. Therefore, we turn to addressing Hoang's allegations of error by the small claims court.

## II.

■ The second issue is whether the small claims court abused its discretion when it bifurcated the proceedings on Jamestown's complaint for ejectment of Hoang from the proceedings on Hoang's complaint against PMPG for damages. Provided that a trial court fulfills its duty to conduct trials expeditiously and consistent with orderly procedures and the administration of justice, a trial court has discretion to conduct the proceedings before it in any manner that it sees fit. *N. Ind. Pub. Serv. Co. v. G.V.K. Corp.,* 713 N.E.2d 842, 846–847 (Ind.Ct.App.1999), *reh'g denied, trans. denied.* We review the decisions that a trial court makes regarding the conduct of the proceedings for an abuse of that discretion. *Id.* at 847. An abuse of discretion has occurred if the trial court misinterpreted the law or if the court's decision was against the logic and effect of the facts and circumstances before it. *Webber v. Miller,* 731 N.E.2d 476, 478 (Ind.Ct.App.2000).

In this case, the small claims court bifurcated the proceedings on possession of the housing unit from the proceedings on Hoang's damages. At the beginning of the hearing on possession of the unit, the trial court informed Hoang that:

Mr. Hoang, let me explain to you what's going to occur. today. The hearing set today only involves the issue of possession. The Plaintiffs are going to attempt to prove that they should be entitled to take back the possession of the property. You can present any evidence today that is relevant to the issue of possession. I have reviewed your Counter Claim. I will not enter any mone-

tary judgment today, either in their favor for rent or damage or in your favor for damage. There will automatically be a second hearing date set. The only issue today is going to involve any breach of this lease agreement and their ability to take possession. If you start talking about damage to your computer, I'm [going to] cut you off. Do you understand that?

Appellant's Appendix at 65–66. Hoang claims that the trial court abused its discretion when it bifurcated the proceedings.

Rule 12 of the Local Rules of the Small Claims Division of Allen Superior Court—Civil Division provides, in pertinent part, that:

> **A. Bifurcated Judgment and Expedited Hearing on Possession.** Judgments in actions involving the issue of possession of real estate or personal property shall be bifurcated. The initial hearing on possession issues shall be set in an expedited setting on the Referee's or Judge's calendar. A final judgment for possession of the real estate or personal property shall be entered at the initial hearing and a judgment for back rent and/or other damages, if any, shall be entered at a subsequent hearing.

Allen County Small Claims Local Rule 12(A) (emphasis in original). The use of the word "shall" in the first sentence of Small Claims Local Rule 12(A) suggests that the trial court was *required* to bifurcate the proceedings. *See United Rural Elec. Membership Corp. v. Ind. & Mich. Elec. Co.*, 549 N.E.2d 1019, 1022 (Ind.1990) ("When the word 'shall' appears in a statute, it is construed as mandatory rather than directory unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning."), *reh'g denied.* The trial court could not have abused its discretion by performing an act that it was required to perform by local rule.[1] *Cf. Paternity of J.W.L. by J.L.M. v. A.J.P., Jr.*, 693 N.E.2d 959, 960 (Ind.Ct.App.1998) (wherein statute contained the term "shall" and the trial court erred by proceeding as if it had discretion to deny that statutory mandate).

Nevertheless, Hoang claims that the trial court abused its discretion by bifurcating the proceedings because if Hoang had been able to present evidence regarding his damages claim then the Magistrate "would have known that [PGPM was] not allowed access to those rooms because those rooms were the place Hoang hid his valuable property from them who had been stealing his valuable property under the cover of their so-called inspections." Appellant's Brief at 22. However, as evidenced by the trial court's instructions to Hoang that are quoted above, the trial court did not tell Hoang that he could not present evidence regarding theft of his

---

1. In another section of his brief, Hoang claims that someone at the trial court "tampered with" his claim against PGPM "by crossing out Hoang's word **'Counter'** and writing in his word **'3rd Party'** on top of it." Appellant's Brief at 27 (emphasis in original). Hoang alleges that the Magistrate had this done to justify bifurcating the proceedings. *Id.* A counterclaim is "[a] claim presented by a defendant in opposition to or deduction from the claim of the plaintiff." BLACK'S LAW DICTIONARY 349 (6th ed.1990). A third party complaint, on the other hand, is "[a] complaint filed by the defendant against a third-party (i.e., a person not presently a party to

the lawsuit)." *Id.* at 1480. Consequently, the claim that Hoang filed against PGPM was a third party complaint, not a counter claim. No error occurred when someone at the small claims court placed the appropriate name on the claim that Hoang had misnamed. Moreover, as we have discussed herein, a small claims court rule required the court to bifurcate the proceedings regardless of whether Hoang's claim was a counterclaim or a third party complaint. *See infra* Part II. Therefore, Hoang's allegation that the trial court had the title of Hoang's claim altered so that the proceedings could be bifurcated is wholly without merit.

items as his defense to Jamestown's breach of occupancy agreement claim. Rather, the trial court told Hoang that he could not present evidence regarding damage to his computer, which was relevant to damages caused by either Jamestown's or PGPM's failure to repair the roof. In addition, during our review of the transcript, we did not discover an instance when the trial court prohibited Hoang from presenting evidence regarding theft by Jamestown or PGPM being the reason why he did not allow inspection of the unit. Instead, Hoang's defense at trial was that the Occupancy Agreement did not require him to allow Jamestown to inspect the entire apartment. Consequently, if Hoang was prejudiced by his failure to present evidence regarding the theft of his items, the trial court was not responsible for that prejudice.

### III.

■ The third issue is whether the small claims court's order ejecting Hoang from Jamestown was clearly erroneous. Because this case was tried by the court without a jury, we "shall not set aside the ... judgment unless clearly erroneous." Ind. Trial Rule 52(A). A judgment is clearly erroneous if the record leaves us with a firm conviction that a mistake has been made. *Mullis v. Brennan,* 716 N.E.2d 58, 62 (Ind.Ct.App.1999). We review the judgment by first determining if the record supports the findings and then determining if the findings support the judgment. *Id.* We will only overturn the court's findings of fact if they are clearly erroneous because the record lacks any evidence or inferences therefrom to support them. *Id.* When reviewing the findings and judgment, we consider only the evidence and inferences therefrom most favorable to the judgment, and we may not reweigh the evidence or reassess the credibility of the witnesses. *Walker v. Elkin,* 758 N.E.2d 972, 974 (Ind.Ct.App.2001).

Even though the trial court sua sponte issued findings of fact with its judgment, we may affirm the judgment on any theory supported by the findings. *See Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998).

Jamestown specifically claimed that Hoang violated Articles 11, 14, and 16 of the Occupancy Agreement. Article Eleven of the agreement provides, in pertinent part, that:

> The officers and employees of the Corporation shall have the right to enter the dwelling unit of the member in order to effect necessary repairs, maintenance, and replacements, and authorize entrance for such purposes by employees of any contractor, utility company, municipal agency, or others, at any reasonable hour of the day and in the event of emergency, at any time.

Appellant's Appendix at 14. Article Fourteen provides:

> The Member covenants that he will preserve and promote the cooperative ownership principles on which the Corporation has been founded, abide by the Charter, By–Laws, (rules and regulations of the Corporation) and any amendments thereto, and by his acts of cooperation with its other members bring about for himself and his co-members a high standard in home and community conditions.

*Id.* at 16. Article Sixteen provides:

> The Member agrees that the representatives of any mortgagee holding a mortgage on the property of the Corporation, the officers and employees of the Corporation, and with the approval of the Corporation, the employees of any contractor, utility company, municipal agency or others, shall have the right to enter the dwelling unit of the Member and make

inspections thereof at any reasonable hour of the day.

*Id.*

In its order denying Hoang's motion to correct error, the trial court found that Jamestown proved at the trial that Hoang breached the Occupancy Agreement. In its original judgment on possession, the trial court found more specifically that Hoang had "breached Article 16 of the [occupancy] agreement by failing to allow a proper inspection of the premises. For these reasons, [Jamestown] is entitled to a judgment for possession." *Id.* at 8.

Hoang's defense at trial was that he could not have breached the Occupancy Agreement because he allowed Jamestown to inspect the apartment on March 30, 2001. In addition, Hoang's questions to witnesses suggest that Hoang was also alleging that the Occupancy Agreement did not require him to give a key to Jamestown or to allow Jamestown to inspect "every room in the house," and that the two bedrooms that Jamestown was unable to inspect were "closets" that Jamestown did not need to inspect. Transcript at 47, 76.

By agreeing to Article Sixteen of the Occupancy Agreement, Hoang promised to allow inspections of his unit "at any reasonable hour of the day." Appellant's Appendix at 16. Because Hoang did not allow Jamestown to complete the inspection of his unit, despite the fact that it tried to do so for two months, the trial court's finding that Hoang breached Article Sixteen of the Occupancy Agreement was not clearly erroneous.

Hoang's other allegations, that the Occupancy Agreement did not allow Jamestown to inspect every room in the unit and that the 9 × 12 and 10 × 12 rooms with closets were themselves closets, are without merit. First of all, a room in a rental property remains a bedroom regardless of how the current tenant may use that room—the fact that Hoang used two of the bedrooms for storage of personal property does not convert those bedrooms into closets. Second, given that the purpose of the inspections was to keep the housing project well maintained, we fail to see how Jamestown could effectuate that purpose if it was not permitted to inspect every room in Hoang's unit.

In addition, we disagree with Hoang's argument that he did not have to give a key to Jamestown. By agreeing to Article Eleven, Hoang clearly promised to allow Jamestown to enter his unit for "necessary repairs, maintenance, and replacements . . . at any reasonable hour of the day and in the event of emergency, at any time." This promise means that Jamestown had to have a way to enter Hoang's apartment even when Hoang was not present. Therefore, Hoang was required to give Jamestown a key to the locks of his apartment. Even though the small claims court did not explicitly so find, Hoang breached Article Eleven of the Occupancy Agreement by refusing to give Jamestown a key to his back door and by bolting or blocking the front door shut. Consequently, the small claims court did not err when it found that Hoang breached the Occupancy Agreement.

## IV.

The final issue is whether the small claims court properly followed the statutory procedures for ejectment. First, Hoang claims that the small claims court erred by failing to require Jamestown to file a bond, pursuant to Ind.Code § 32–6–1.5–6, to cover any damages to Hoang that may have occurred if he were wrongfully ejected. That code section provides:

An order of possession with or without notice, except final judgment, shall not issue in plaintiff's favor until plaintiff has filed with the court a written under-

taking in an amount fixed by the court and executed by a surety to be approved by the court to the effect that they are bound to the defendant in an amount sufficient to assure the payment of such damages as the defendant may suffer if the property has been wrongfully taken from him.

I.C. § 32–6–1.5–6. This section "provides a method of procedure by which possession may be immediately and peaceably obtained." *Ault v. Phillips,* 108 Ind.App. 535, 542, 27 N.E.2d 379, 382 (1940). Then, "if the eviction is subsequently determined to have been wrongful the remedy is by an action on the bond." *Id.* In *Cunningham,* we held that the trial court had inappropriately awarded a pre-judgment possession order to Georgetown without requiring Georgetown to file a bond to cover Cunningham's possible damages. *Cunningham,* 708 N.E.2d at 628. However, contrary to Hoang's contention, his situation is not like Cunningham's situation.

At her prejudgment possession hearing, Cunningham was not permitted to present any evidence to contradict Georgetown's allegation that she had breached the occupancy agreement. *Id.* at 627. Consequently, the trial court's decision regarding possession of Cunningham's unit was a "preliminary determination" that would stand until the final hearing on the merits. *See* Ind.Code § 32–6–1.5–5. In contrast, at his hearing, Hoang was permitted to present evidence to contradict Jamestown's allegation that he had breached the Occupancy Agreement. In fact, Hoang's hearing was a trial on the merits regarding the issue of possession. The small claims court's order giving possession of Hoang's unit to Jamestown was not a "preliminary determination." *See id.* Rather, it was a final determination on the merits regarding possession of that unit. Therefore, there was no need for Jamestown to file a bond with the trial court pursuant to Ind.Code § 32–6–1.5–6.

■ Next, Hoang argues that he was never told that he could file a written undertaking to stay delivery of the property to Jamestown under Ind.Code § 32–6–1.5–2. Under that code section, the court is required to take a number of steps, including informing "the defendant that he may ... file with the court a written undertaking to stay the delivery of the property...." I.C. § 32–6–1.5–2. However, a trial court is only required to inform the defendant that he may file a written undertaking pursuant to Ind.Code § 32–6–1.5–2 if the plaintiff in an ejectment action files an affidavit of the type discussed in Ind.Code § 32–6–1.5–1. Ind.Code § 32–6–1.5–1 provides:

> [a] plaintiff may, at the time of filing his complaint, or at any time prior to judgment, file with the clerk ... an affidavit stating that he is entitled to the possession of the property described in the complaint, that the defendant has unlawfully retained possession thereof, the estimated value of the property, and the estimated rental value thereof.

During our review of the record, we did not discover an affidavit filed by Jamestown pursuant to Ind.Code § 32–6–1.5–1, which would have required the small claims court to follow the procedures outlined in Ind.Code § 32–6–1.5–2. Rather, Jamestown merely filed the complaint and waited for the hearing on the merits. Consequently, the small claims court did not err by failing to inform Hoang that he could file a written undertaking to stay the delivery of the property.

For the foregoing reasons, the trial court did not abuse its discretion when it denied Hoang's motion to correct error. We affirm the small claims court's ejectment of Hoang from Jamestown, and we remand the cause for the remaining proceedings on damages.

Affirmed and remanded.

DARDEN, J. concurs.

BAILEY, J. dissents with separate opinion.

BAILEY, Judge, dissenting.

I respectfully dissent from the majority's conclusion that Indiana Code section 33–5–2–4(b)(2) vested the small claims court here with jurisdiction over Jamestown's eviction action.

Indiana Code section 33–5–2–4(b)(2), as noted by the majority, grants the small claims docket of the superior courts in Allen County jurisdiction over "possessory actions between the landlord and tenant in which the rent due at the time the action is filed does not exceed six thousand dollars ($6,000)." The majority concludes that the court had jurisdiction over this action because Jamestown and Hoang were in a landlord-tenant relationship, and because Hoang waived his opportunity to seek more than $6,000 of the $97,000 vested interest in the cooperative. I disagree.

The relationship between Jamestown and Hoang admittedly bears some resemblance to that of a landlord and a tenant. A tenant is generally defined as "one who holds lands of another; one who has the temporary use and occupation of real property owned by another person (called the 'landlord'), the duration and terms of his tenancy being usually fixed by an instrument called a 'lease.'" BLACK'S LAW DICTIONARY 1466 (6th Ed.1990). In this case, the Jamestown cooperative owned the property on which Hoang resided, and Hoang resided on the property pursuant to the terms of an occupancy agreement. In our recent decision in *Cunningham v. Georgetown Homes, Inc.,* 708 N.E.2d 623 (Ind.Ct.App.1999), which involved a similar relationship, this Court explored the respective rights of the cooperative and the resident member with regard to the member's continued residence on the property. We strongly agreed that the cooperative

was empowered to enforce the terms of a member's occupancy agreement, stating, "the unique and symbiotic nature of cooperative living requires that a cooperative association be able to remove breaching members from its community expediently." *Id.* at 626. We accordingly concluded that the housing cooperative could seek to remove the resident member from the property for the alleged violation of her occupancy agreement pursuant to the ejection procedures set out at Indiana Code section 32–6–1.5–1 to –12. *Id.* at 627.

As explained in *Cunningham,* however, a cooperative member is not necessarily a tenant of a housing cooperative simply because the member resides on property owned by the cooperative pursuant to the terms of an occupancy agreement. Rather, when the cooperative member has a vested ownership right in the cooperative, the member and cooperative have a unique hybrid relationship in which the member is not a tenant of the cooperative. *Cunningham,* 708 N.E.2d 623, 626. Instead, the cooperative member is an owner of personal property, namely the member's ownership share in the cooperative. *Id.*

In *Cunningham,* we determined that the member had a vested interest in the cooperative on the basis of the terms of the member's occupancy agreement. In particular, we noted that the occupancy agreement in *Cunningham* contained provisions that are "not included in a typical residential lease but, rather, are indicative of an ownership interest in the unit." 708 N.E.2d 623, 624. For example, in that case the member was obligated under her occupancy agreement to pay a monthly maintenance charge rather than rent. *Id.* Part of the maintenance charge included the member's share of the mortgage on the property. *Id.* In addition, the member was responsible for various maintenance expenses, including decorating and repairs.

*Id.* Further, the occupancy agreement at issue there indicated that the member could sell her equity interest in her membership to someone else. *Id.* at 626 and 626 n. 3 and n. 4. Thus, while we concluded that the member could be removed from the cooperative pursuant to the ejection procedures set out at Indiana Code section 32–6–1.5–1 to –12, we directed the trial court upon remand to ensure that the member's vested interest in the cooperative was adequately protected. *Id.* at 627.

Jamestown firmly contends that this case is nothing like *Cunningham,* and that Hoang was simply a tenant with no protectable property interest related to his membership in the cooperative. This is plainly not the case. Jamestown's Rules and Regulations, which are given to all members, explicitly state that "[a]s a cooperative, we differ significantly from other housing and apartments. Each member at Jamestown Homes has a vested interest in the property and pays monthly carrying charges instead of rent." (Plaintiff's Ex. 3, Tr. 14.) Hoang's occupancy agreement contains many of the same elements found in the agreement at issue in *Cunningham,* and confirms Jamestown's assurance that cooperative members own a vested interest in the cooperative. For example, as in *Cunningham,* Hoang was obligated under the agreement to maintain and repair his dwelling, and was responsible for decorating expenses. In addition, Hoang paid monthly "carrying charges" instead of rent. Most significantly, and contrary to Jamestown's contentions, Hoang's carrying charges explicitly comprise, at least in part, an investment in the cooperative. In addition to funding insurance costs, tax liabilities and various other maintenance and operating expenses, Hoang's carrying charges paid a proportional share of the principal and interest payments on the property's mortgage. The occupancy agreement provides that the "amount of Carrying Charges required for payment on the principal of the mortgage of the Corporation or any other capital expenditures shall be credited upon the books of the Corporation to the 'Paid in Surplus' account as a capital contribution by the members." (App.11.) In the corporate context, a capital contribution is a transaction between a shareholder and a corporation whereby the shareholder transfers money or property to the corporation. BLACK's LAW DICTIONARY 209 (6th Ed.1990). Instead of receiving additional stock, the basis of the shareholder's existing investment in the corporation is increased in proportion to the capital contribution. *Id. See also C.I.R. v. Fink,* 483 U.S. 89, 94, 107 S.Ct. 2729, 97 L.Ed.2d 74 (1987) (explaining tax consequences of a shareholder's voluntary contribution to the capital of a corporation). Thus, every time Hoang paid his monthly carrying charges, Hoang made a contribution to Jamestown's capital, which increased Hoang's basis in his share of the cooperative.

Hoang accordingly had a vested ownership interest in the cooperative, and pursuant to *Cunningham,* the relationship between Jamestown and Hoang was not strictly that of landlord and tenant. Because Hoang was not Jamestown's tenant, Jamestown's ejectment action was beyond the small claims court's subject matter jurisdiction spelled out in Indiana Code section 33–5–2–4(b)(2). Even if Hoang could be characterized as Jamestown's tenant, or if, as the majority puts it, "the parties are sufficiently like landlord and tenant for the purposes of jurisdiction," Slip Op. at 11, the small claims court nevertheless lacked jurisdiction over the case.

The jurisdiction of an inferior court like the small claims division of a superior court is strictly limited to that which is provided for in the constitution or statute. *Buckmaster v. Platter,* 426 N.E.2d 148, 150 (Ind.Ct.App.1981). The statute at is-

sue here again grants the small claims court jurisdiction over "possessory actions between the landlord and tenant in which the rent due at the time the action is filed does not exceed six thousand dollars ($6,000)." IND.CODE § 33–5–2–4(b)(2). Jamestown's request for Hoang's ejectment was not simply a possessory matter. Rather, I believe that the question of Hoang's ejectment was inextricably bound up with the disposition of whatever ownership interest he had in the cooperative, taking the matter out of the small claims court's jurisdiction.

As this Court explained in *Cunningham*, if a trial court grants a housing cooperative's request for the ejectment of a member from the cooperative, the trial court is obligated to adequately protect the member's vested interest in the cooperative from divestment. 708 N.E.2d at 627. The majority characterizes Hoang's identification of his ownership interest as a request for damages, and appears to suggest that Hoang waived his claim to any part of his interest that exceeded $6,000 by filing his claim against Jamestown's property manager, PGPM, Inc. in the small claims court. As the majority sees it, "if Hoang was concerned about his alleged $97,000 vested interest in Jamestown, then Hoang should have filed his counterclaim on the plenary docket of the Allen Superior Court and moved for the two causes of action to be consolidated in that court." (Op. at 1035.)

First, Hoang's claim against PGPM was for personal property damage, and appears to have been totally unrelated to his vested ownership interest in the cooperative. To the extent Hoang waived his right to damages by pursuing his claim against PGPM in the small claims court, the waived damages necessarily related only to the claim against PGPM. Second, while Hoang might have sought the protection of his ownership interest in the superior court and moved for consolida-

tion, I do not think that Hoang was required to take such action. Rather, I believe that under *Cunningham*, and as a matter of logic and sound public policy, a cooperative member's right to the trial court's protection of the member's ownership interest in the cooperative is a fundamental and indivisible component of, and is accordingly triggered by the filing of, a cooperative's ejectment action. This is because the cooperative member owns his membership in the cooperative primarily for the purpose of securing his right to occupy a particular residential unit within the cooperative. *See id.* at 626. Thus, when a housing cooperative seeks to eject a member who has a vested ownership interest in the cooperative related to his residence in the unit, the cooperative effectively seeks the forfeiture or divestment of the member's interest. The settlement of that interest under the terms of the applicable occupancy agreement, rules or by-laws is therefore necessarily implicated by the cooperative's ejectment action.

Because Jamestown's ejectment action, which requested the dispossession of Hoang from his residence, also implicated the divestment of Hoang's interest in the cooperative, the action was not simply a possessory action within the meaning of Indiana Code section 33–5–2–4(b)(2). It appears true, as the majority notes, that Hoang never specifically apprized the small claims court of his vested ownership interest, and never asked the trial court to take any action with regard to his interest. The existence of Hoang's interest and the trial court's affirmative obligation to address that interest, however, are dispositive of the small claims court's lack of subject matter jurisdiction, an issue that may never be waived. *See Georgetown Bd. of Zoning Appeals v. Keele*, 743 N.E.2d 301, 303 (Ind.Ct.App.2001). Hoang's failure to raise the issue of his ownership interest below therefore does

not alter the fact that the small claims court lacked subject matter jurisdiction over Jamestown's ejectment action. Moreover, where it appears that a trial court lacks subject matter jurisdiction, the trial court is bound to raise the issue *sua sponte* and determine the question. *Downham v. Wagner*, 408 N.E.2d 606, 611 (Ind.Ct.App.1980). I believe that when a small claims court is presented with a co-operative housing community's request to eject a member from the cooperative, the small claims court should suspect that the member may have an ownership interest, the divestment of which may be implicated by the ejectment action. The small claims court here was particularly on notice to confirm its jurisdiction under the "possessory action" statute because Jamestown appended to its Notice of New Claim a copy of the occupancy agreement, which supports Hoang's contention that he had a vested interest in the cooperative. Had the small claims court raised the question of its subject matter jurisdiction, the court should have concluded that jurisdiction over Jamestown's action was absent, and should have transferred the case to the court's plenary docket.

In summary, I conclude that the small claims court lacked jurisdiction over Jamestown's ejectment action under Indiana Code section 33–5–2–4(b)(2) because Hoang was not Jamestown's tenant, and because even if he was, Jamestown's action was not simply a possessory matter, but rather was a more complex matter contemplating the resolution of whatever ownership interest Hoang might have had in the cooperative. For this reason, the judgment of the small claims court is void. *In re Adoption of H.S.*, 483 N.E.2d 777, 780 (Ind.Ct.App.1985). I would return this matter to the small claims court with instructions to transfer the case to the Allen County Superior Court's plenary docket for further proceedings.