**CENTEX HOME EQUITY CORPORATION f/k/a Nova Credit Mortgage Corporation, Appellant–Plaintiff,**

v.

**David S. ROBINSON, Century Cellular Network, State of Indiana, Department of Revenue, FT Mortgage Companies, d/b/a MNC Mortgage and Bank One Richmond, NA, Appellees–Defendants,**

and

**Hani Sharaya, Appellee–Movant.**

No. 49A02–0110–CV–644.

Court of Appeals of Indiana.

Oct. 18, 2002.

James G. Lauck, Kroger, Gardis & Regas, Indianapolis, IN, Attorney for Appellant.

George E. Palmer, Indianapolis, IN, Attorney for Appellee Hani Sharaya.

## OPINION

BAILEY, Judge.

### Case Summary

Centex Home Equity Corporation (Centex), appeals the trial court's grant of Hani Sharaya (Sharaya)'s Emergency Motion to Set Aside Judgment and Sheriff's Sale, which set aside a mortgage foreclosure judgment in favor of Centex as well as the resulting Sheriff's sale of the mortgaged property to Sharaya. We affirm.

### Issues

The issues before us are whether the trial court properly set aside Centex's foreclosure judgment and the resulting sheriff's sale.

### Facts and Procedural History

On March 15, 1996, David Robinson (Robinson) obtained a loan from FT Mortgage Company (FT Mortgage), which was secured by a mortgage on Robinson's property located at 6219 East 46th Street in Indianapolis, Indiana. FT Mortgage recorded the mortgage on April 3, 1996. Robinson borrowed additional funds from Centex on October 7, 1996. This loan was also secured by Robinson's property, and the related mortgage was recorded on October 15, 1996. Robinson apparently defaulted on his payments to FT Mortgage, and on October 2, 1997, FT Mortgage filed a foreclosure action in Marion County Superior Court 11. Among the defendants FT Mortgage named in its action was Centex. Robinson, however, filed for bankruptcy on December 3, 1997, and the trial court either dismissed or stayed FT Mortgage's foreclosure action on December 4, 1997.

Superior Court 11 reinstated FT Mortgage's action on April 7, 1999. The same day, Centex filed its own foreclosure action in Marion County Superior Court 10, alleging Robinson's default on the second mortgage. Centex named Robinson, FT Mortgage, and other creditors of record as defendants. It appears that neither Robinson nor FT Mortgage responded to Centex's complaint, and on July 9, 1999, Superior Court 10 entered its In Rem Default Judgment and Decree of Foreclosure for Centex against Robinson and FT Mortgage for $30,582.68.[1] In the decree, the trial court found that FT Mortgage was in default, and declared that Centex was entitled to an in rem judgment against the defendants in the amount of its mortgage lien. The trial court specifically concluded that Centex's judgment was the "first lien upon the real estate." The trial court thus ruled Centex's mortgage lien foreclosed against all of the defendants. The decree specified that the judgment was to be satisfied through a Sheriff's sale of Robinson's property, with proceeds to be applied to satisfy the costs of the action, Centex's judgment, the claim of another creditor, and the state's tax lien. Although the decree recited that Centex was entitled to judgment against FT Mortgage, it made

---

1. Another defendant, Bank One Richmond, NA, an entity whose specific relationship to this case is unknown, was also defaulted.

no mention of the survival or satisfaction of FT Mortgage's interest in the property through the sheriff's sale.[2]

On August 6, 1999, a Notice of Sheriff's Sale was issued, indicating that the property would be sold on September 15, 1999 to satisfy Centex's judgment. Despite the fact that FT Mortgage declined to defend its interest in the property and was defaulted, the Notice provided that the property was "[s]ubject to a mortgage in favor of FT Mortgage Companies d/b/a MNC Mortgage dated March 15, 1996 and recorded April 3, 1996 as Instrument No. 96–43735, in the original principal sum of $35,000.00." The contents of the notice were published.

At some point, FT Mortgage amended its complaint in the Superior Court 11 action to reflect the existence of Centex's July 9, 1999 judgment. On August 31, 1999, after issuing and publishing the Notice of Sheriff's Sale related to Centex's own judgment in the Superior Court 10 action, Centex answered FT Mortgage's amended complaint in the Superior Court 11 foreclosure action. Centex alleged in its answer that it held a mortgage on the property, and asked the trial court to accord Centex's lien its rightful priority, and to provide for the lien's satisfaction through proceeds of any sale resulting from the trial court's judgment.

On September 15, 1999, Sharaya bought Robinson's property for $29,000 at an auction held by the Marion County Sheriff's Department. Sharaya was not aware of FT Mortgage's lien at the time of the purchase because he had not conducted a title search prior to purchasing the real estate, and because he had learned of the sale not by reading the public notice, but by visiting the Sheriff's department and consulting the Department's list of properties to be sold at the monthly auction, which did not contain information regarding FT Mortgage's mortgage. Following the sale, Sharaya was given a Sheriff's Deed for the property, which repeated verbatim the language from the Notice of Sheriff's Sale indicating that the property was subject to a mortgage in favor of FT Mortgage. Sharaya called Centex's attorney, apparently because he was identified on the Sheriff's Deed, and asked about FT Mortgage's interest in the property. The attorney advised Sharaya to contact FT Mortgage or its attorneys to discuss the matter. Sharaya then recorded the deed, took possession of the property, and rented it to a tenant.

On December 21, 1999, FT Mortgage's attorneys wrote to Sharaya, advising that they were aware Sharaya now held title to the property, and inquiring as to Sharaya's intentions with regard to FT Mortgage's mortgage. Sharaya apparently offered to settle the matter, but received no response from FT Mortgage or its attorneys.

On May 9, 2000, the trial judge in Superior Court 11 entered an Agreed and Default Judgment Entry and Decree of Foreclosure in FT Mortgage's foreclosure action. Despite the fact that the interests of former property owner Robinson and former second mortgage holder Centex in the property were apparently extinguished by virtue of the foreclosure judgment and sale, the judgment recited that former property owner Robinson as well as second mortgage holder Centex agreed to the entry of judgment against Robinson in the amount of $41,778.82, which was to be satisfied by the sale of the property. Although Sharaya had purchased the prop-

---

**2.** There is no indication in the record that FT Mortgage has ever attempted to have Centex's foreclosure judgment set aside.

erty nearly eight months earlier, apparently leaving Robinson with no interest in the real estate, and although both FT Mortgage and Centex were aware that Sharaya had purchased the property and were in communication with Sharaya after the purchase, no one advised Sharaya about FT Mortgage's pending foreclosure action, and Sharaya was not added as a party. Further, while FT Mortgage had amended its complaint at some point in August 1999, apparently for the purpose of acknowledging the existence of Centex's July 9, 1999 judgment, it does not appear that FT Mortgage amended its complaint again to reflect the fact that the property it sought to have sold had already been purchased by a third party. Indeed, there is no indication in the record that the attorneys for FT Mortgage, Centex, or anyone else, alerted the judge in Superior Court 11 to the fact that the property had been sold and that the new property owner had been given notice of, or added as a defendant to, the action pending in Superior Court 11.

On May 15, 2000, just five days after Superior Court 11 entered the agreed judgment, the property was sold again at the Marion County Sheriff's monthly auction, this time to FT Mortgage. There is no evidence in the record suggesting that the Sheriff's Department published the requisite public notice of the sale, or that Sharaya was notified of the sale. At some point after the May 15, 2000 sale, someone, presumably FT Mortgage, attempted to evict Sharaya's tenant from the property. There is no indication in the record that Sharaya or the tenant was given prior notice of the eviction. It is unclear if the eviction was completed.

On August 8, 2000, Sharaya filed his Emergency Motion to Set Aside Judgment and Sheriff's Sale in Superior Court 11, seeking to set aside the May 9, 2000 agreed judgment in favor of FT Mortgage, and the resulting May 15, 2000 Sheriff's sale. Although the title of Sharaya's motion indicated that Sharaya was seeking to have the judgment in the Superior Court 11 action set aside, it appears that Sharaya approved of the validity of the Superior Court 11 action, but wanted the matter stayed until the Superior Court 10 action could be set aside. In particular, Sharaya argued in his motion that all questions regarding Robinson's default on his mortgages and all actions for foreclosure on the real estate should have been litigated together, and that the action should have proceeded in Superior Court 11 because FT Mortgage, the first party to seek foreclosure, had filed its action in that court. Sharaya accordingly asked the judge in Superior Court 11 to set aside the judgment and to enjoin FT Mortgage from taking possession of the property until the matter could be resolved.

Sharaya then proceeded to file another Emergency Motion to Set Aside Judgment and Sheriff's Sale on August 9, 2000 in the Superior Court 10 action. Sharaya again argued that there should never have been two separate parallel actions to foreclose on two separate mortgages related to the same real estate, but rather that both foreclosure claims should have proceeded together in Superior Court 11.[3] Sharaya accordingly asked the trial court to set aside the July 9, 1999 foreclosure judgment in favor of Centex, as well as the

---

3. In his two motions filed August 8 and August 9, 2000, Sharaya appears to have mixed his references to Superior Courts 10 and 11 in certain places, but the gist of his argument, that the actions should have proceeded to-gether in Superior Court 11 because FT Mortgage held the first mortgage on the property and had filed its action first, remains apparent.

resulting sheriff's sale through which Sharaya bought the property.

Around August 22, 2000, FT Mortgage responded to Sharaya's motion to set aside the June 9, 2000 Superior Court 11 judgment in favor of FT Mortgage, arguing that Sharaya should have intervened in the case to protect his interest in the property, and that by failing to do so, Sharaya had waived his right to challenge the judgment.[4] Superior Court 11 apparently held a hearing and denied Sharaya's motion on August 24, 2000. There is no indication in the record that Sharaya appealed this decision.

Sharaya's Superior Court 10 set-aside request did not proceed as quickly. On October 5, 2000, Centex responded to the motion, arguing that Sharaya knew or should have known of the existence of FT Mortgage's mortgage when he purchased the property, and that Sharaya should have intervened in FT Mortgage's action to protect his interest in the property. The judge in Superior Court 10 heard the motion on May 17, 2001. During the hearing, Sharaya asked the trial court to set aside the resulting Sheriff's sale on the ground that Sharaya did not know of FT Mortgage's first mortgage lien when he bought the property. The trial court granted Sharaya's motion on May 23, 2001. On June 18, 2001, Centex filed a motion to correct errors. The court heard the motion on August 20, 2001, and denied it on September 4, 2001. Centex appeals.

## Discussion and Decision

### A. Scope and Standards of Review

We note that the decision by the trial judge in Superior Court 11 denying Sharaya's motion to set aside FT Mortgage's May 9, 2000 foreclosure judgment, and the resulting May 15, 2000 Sheriff's sale, has apparently not been appealed and is not at issue here.[5] Our review is limited to determining whether the trial court in Marion County Superior Court 10 properly set aside Centex's July 9, 1999 foreclosure judgment and the resulting September 15, 1999 sheriff's sale.

A motion for relief from judgment under Trial Rule 60(B) is entrusted to the sound discretion of the trial court, and we may neither reweigh the evidence

4. FT Mortgage's response fails to mention the fact that FT Mortgage's attorneys apparently did not notify Sharaya about the pending action or of its intention to seek an agreed judgment, and did not add him as a defendant, despite having been fully aware of Sharaya's interest in the property and having been in communication with him between the time of the Sheriff's sale and the date the agreed judgment was entered.

5. We accordingly may not decide whether, given the status of FT Mortgage's lien as a result of its default in Centex's foreclosure action, which will be discussed below, the trial court in Superior Court 11 erred by failing to set aside FT Mortgage's foreclosure judgment and the resulting sale on the ground that they were voidable. Nor may we decide whether FT Mortgage's foreclosure judgment was otherwise void as to Sharaya by virtue of the fact that Sharaya was never added to the case as a defendant despite FT Mortgage's specific knowledge that Sharaya was the record owner of the property as a result of the prior sale. *See, e.g., Armstrong v. Hufty*, 156 Ind. 606, 55 N.E. 443, 449 (1899) (stating the general rule that it is indispensably necessary in the foreclosure of a mortgage upon real estate that the party to whom the mortgaged property has been conveyed be made a party or the foreclosure will be void as to him). Similarly, we cannot here determine whether the sale resulting from FT Mortgage's foreclosure judgment was defective for lack of published notice or for being held just five days after the judgment was entered, in light of *Indiana Code section 32–8–16–1(d)*, which provides that a sheriff must advertise a sale by publication once each week for three successive weeks in a local newspaper, and may not proceed to sell the property until thirty days have elapsed since the first publication.

nor substitute our judgment for that of the trial court. *National Oil & Gas, Inc. v. Gingrich,* 716 N.E.2d 491, 497 (Ind.Ct. App.1999). When considering a Trial Rule 60(B) motion, a trial court must weigh the alleged inequity that would result by allowing a judgment to stand against the interests of the prevailing party in its judgment, as well as those of society at large in the finality of litigation in general. *Id.* We may reverse the trial court's decision only if the decision is squarely opposed by the logic and effect of the facts and circumstances. *Id.*

In addition, an action to foreclose a mortgage lien is essentially equitable in nature, *Smith v. Federal Land Bank of Louisville,* 472 N.E.2d 1298, 1302 (Ind.Ct.App.1985), and trial courts have considerable equitable discretion to set aside sales of property resulting from their foreclosure judgments. *Newhouse v. Farmers Nat. Bank of Shelbyville,* 532 N.E.2d 26, 27 (Ind.Ct.App.1989). A trial court should not hesitate to exercise its equitable authority to set aside a sheriff's sale where there is a gross inadequacy of price or circumstances showing fraud, irregularity or great unfairness. *National Oil & Gas, Inc.,* 716 N.E.2d at 495. When making this determination, the trial court will consider a variety of factors, including the price paid, the effect of procedural irregularities, evidence of mistake or misapprehension, the presence of inequitable conduct, and problems with title to the purchased property. *Id.* at 496 (citing *Newhouse,* 532 N.E.2d at 27). The trial court's decision in this regard is entitled to significant deference, and will not be reversed absent an abuse of discretion. *Id.*

### B. Analysis

#### 1. The Judgment

Centex argues that the trial court erred when it set aside its July 9, 1999 foreclosure judgment. Pursuant to Trial Rule 60(B), a trial court may relieve a party from a judgment for a variety of essentially equitable reasons, provided in most cases that the party seeking relief has a meritorious defense, and that the request is filed within a reasonable time, in certain cases within one year of the judgment. Centex advances several arguments in support of its position that the trial court erred by setting aside the foreclosure judgment. In particular, Centex contends that Sharaya's motion was filed too late, that Sharaya had no meritorious defense, and that the equities did not favor Sharaya's position because Sharaya should have known prior to the sale that the property was subject to FT Mortgage's lien. We agree that the trial court should not have set aside Centex's foreclosure judgment, but for reasons different than those advanced by Centex.

Trial Rule 60(B) specifically provides that a trial court may relieve "a party" from a final judgment. This generally means that one who is not a party to a judgment may not have that judgment set aside unless he intervenes in the action pursuant to Trial Rule 24. *See Lawyers Title Ins. Corp. v. C & S Lathing and Plastering Co.,* 403 N.E.2d 1156, 1158 (Ind. Ct.App.1980). The judgment at issue here was entered against the debtor Robinson and first mortgage lien holder FT Mortgage. The judgment was not entered against Sharaya, who was not a party to the case at the time, and who has apparently never sought to intervene in the action. It is true, as this Court has noted, that one who purchases a property at a foreclosure sale becomes a "quasi party" to the foreclosure action by subjecting himself to the equitable jurisdiction and authority of the trial court. *Union Realty Co. of Greensburg v. Older,* 97 Ind.App. 412, 185 N.E. 522, 524 (1933). This does

not mean, however, that the purchasing party has standing to (or has any need to) seek relief from the foreclosure judgment itself. In *Kneeland v. American Loan & Trust Co.*, 136 U.S. 89, 93–94, 10 S.Ct. 950, 34 L.Ed. 379 (1890), the case cited by this Court in the *Union Realty Co.* case, the United States Supreme Court explained that a foreclosure sale purchaser's rights as a party to the foreclosure action extend to questions arising *after* the sale. Because Sharaya was not a party to the foreclosure judgment at the time it was entered and never intervened in the action, he lacked standing to seek relief from the judgment, and the trial court therefore should not have set the judgment aside.[6]

### 2. The Sheriff's Sale

While Sharaya had no standing to challenge Centex's foreclosure judgment, he was clearly entitled to seek relief from the resulting sheriff's sale. As previously noted, a trial court has considerable equitable discretion to set aside sheriff's sales resulting from the court's foreclosure judgments in cases involving procedural irregularities, mistake or misapprehension, inequitable conduct, and title problems. *See National Oil & Gas, Inc.*, 716 N.E.2d at 496. The trial court set aside the September 15, 1999 Sheriff's sale, but did not explain its reasons for doing so. The record, however, is replete with various irregularities amply justifying the trial court's exercise of its equitable discretion to set aside the sale.

### a. Centex's Concurrent Foreclosure Action

■ As explained above, Centex filed its foreclosure action in Marion County

Superior Court 10 while FT Mortgage's foreclosure action, involving the same real estate and the same parties, was pending in Marion County Superior Court 11. Sharaya argued below that Centex's foreclosure judgment and the resulting sale should have been set aside because Centex was required to seek the foreclosure of its mortgage in conjunction with FT Mortgage's pending foreclosure action. Centex's position is that a mortgagee should not be compelled to foreclose its lien simply because another mortgagee chooses to foreclose that party's lien. As will be more fully discussed below, we agree with Centex that it was not obligated to pursue the foreclosure of its mortgage just because FT Mortgage sought to foreclose its lien and named Centex as a defendant in that action. However, we also agree with Sharaya that because Centex elected to foreclose its mortgage while FT Mortgage's action was pending, Centex's claims should have been joined in FT Mortgage's action so that the claims of all who had an interest could be adjudicated in a single action.

■ We begin by recognizing that Trial Rule 13(A) provides as follows:

> [a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim and does not require the presence of third parties of whom the court cannot acquire jurisdiction.

---

**6.** In the following section, we explain that the sheriff's sale resulting from the foreclosure judgment was properly set aside because Centex should not have sought to foreclose its mortgage in a separate action while FT Mortgage's earlier-filed foreclosure action was

pending. Whether this means that Centex's foreclosure judgment should have been set aside as void is a question we may not address in the absence of a challenge by a party with proper standing.

In general, such claims must be asserted in the initial action, or they are barred. *See Estate of McCullough*, 492 N.E.2d 1093, 1095–96 (Ind.Ct.App.1986). Centex's foreclosure claims were not, however, compulsory counterclaims under Trial Rule 13(A). First, while Centex filed a foreclosure action and named FT Mortgage a defendant, Centex did not exactly have claims against FT Mortgage. Rather, Centex's action was in rem, and FT Mortgage was named as a party only for purposes of providing FT Mortgage with the opportunity to answer as to its interest in the property. Moreover, to the extent Centex had claims against FT Mortgage relating to the respective priorities of the parties' liens, those claims did not arise out of the transaction or occurrence that was the subject matter of FT Mortgage's foreclosure action within the meaning of Trial Rule 13(A). Two causes of action arise from the same transaction or occurrence if there is a logical relationship between them, which exists when the counterclaim arises out of the same aggregate of operative facts as the opposing party's claim. *Ratcliff v. Citizens Bank of Western Indiana*, 768 N.E.2d 964, 967 (Ind.Ct.App. 2002). Here, the operative facts giving rise to FT Mortgage's foreclosure action were Robinson's default on his loan with FT Mortgage, while the operative facts giving rise to Centex's action involved Robinson's default under the Centex mortgage. Thus, Centex's foreclosure claims were not compulsory counterclaims in FT Mortgage's earlier-filed foreclosure action,[7] and Centex was not strictly obligated by Trial Rule 13(A) to pursue its foreclosure claims in FT Mortgage's action.[8] Rather, Centex could have appropriately chosen not to foreclose its mortgage at that time.

While one mortgagee is not necessarily obligated under Trial Rule 13(A) to foreclose its mortgage simply because another mortgagee has sought to foreclose its own lien and named the mortgagee as a defendant in its action, two separate foreclosure actions involving the same property and the same parties should not proceed simultaneously in two different courts. Our Supreme Court has explained that

> [o]ne of the leading purposes of a suit to foreclose a mortgage is to secure such a decree as will enable the plaintiff to sell all the right and title that his mortgage covers, and enable a purchaser at the sale to ascertain what title it is that he buys. To attain this end, it is necessary that all the claims held against the mortgaged premises should be adjusted in one suit. This the spirit of our Code requires, for it makes ample provision for bringing all the interested parties into court. The rule is a salutary one. It tends to repress litigation, gives confidence to public records, secures respect for judgments and decrees, and invests sheriff's sales with strength and certainty that does much to promote the interests of both debtor and creditor.

---

7. Centex's claims against FT Mortgage would, of course, have been permissive counterclaims pursuant to Trial Rule 13(B), which provides that "[a] pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject-matter of the opposing party's claim."

8. Additionally, Centex was not obligated to assert its claims against the defaulting mortgagor Robinson or any of the other defendants in FT Mortgage's action because Centex and those parties were co-parties, and not opposing parties, and Centex's potential claims against Robinson and the other defendants would have been cross-claims if brought in FT Mortgage's action. The bringing of cross claims is permissive and not compulsory. T.R. 13(G); *Consolidated Rail Corp. v. Travelers Ins. Cos.*, 466 N.E.2d 709, 714 (Ind.1984).

*Craighead v. Dalton,* 105 Ind. 72, 4 N.E. 425, 426 (1886). *See also, e.g., O'Brien v. Moffitt,* 133 Ind. 660, 33 N.E. 616, 617–18 (1893); *Pilliod v. Angola Ry. & Power Co.,* 46 Ind.App. 719, 91 N.E. 829, 832 (1910). It is true that this general rule has typically been expressed in the context of discussions regarding a party's obligation to set up any interest he or she may have in a property in response to a foreclosure complaint involving the property, and the consequent loss of that interest for failure to assert it in a timely fashion.[9] *See id.* And we recognize that Centex filed an answer to FT Mortgage's foreclosure complaint, denying FT Mortgage's allegations, including those regarding the priority of FT Mortgage's lien, and requesting that its own lien be accorded its rightful priority in the court's foreclosure judgment. Centex adequately preserved its lien by setting up its answer, and, as noted above, was not strictly obligated to seek the foreclosure of its own lien by virtue of the commencement of FT Mortgage's foreclosure action. We take the rule expressed in the passage cited above to mean, however, that once Centex decided to foreclose its mortgage, it was obligated to do so in conjunction with FT Mortgage's pending foreclosure action.

 The modern procedural mechanism for correcting this kind of irregularity is Trial Rule 12(B)(8), which permits dismissal of an action "[i]f the same action [is] pending in another state court of this state." The rule recognizes that two courts may not simultaneously exercise jurisdiction over what amounts to the same case. Rather, "[w]hen two or more courts have concurrent jurisdiction over the same case, 'the jurisdiction of the court first acquiring such jurisdiction is deemed ex-

clusive until the case is finally disposed of on appeal or otherwise.'" *Pivarnik v. Northern Indiana Public Service Co.,* 636 N.E.2d 131, 135 (Ind.1994) (quoting *State ex rel. International Harvester Co. v. Allen Cir. Ct.,* 265 Ind. 175, 352 N.E.2d 487, 489 (1976)). Two cases are the same when the parties, subject matter and remedies sought are substantially the same in both suits such that the outcome of one will affect the adjudication of the other. *See id.* at 134; *Indiana and Michigan Elec. Co. v. Terre Haute Industries, Inc.,* 467 N.E.2d 37, 40 (Ind.Ct.App.1984).

Here, the parties in the foreclosure actions filed by FT Mortgage and Centex similarly consist of the respective plaintiffs, the debtor Robinson, and the other creditors of record. In addition, the subject matter, while not identical, is substantially similar. Both cases involve Robinson's alleged default under the respective mortgages and the parties' respective claims of priority and satisfaction of their respective liens. Finally, the remedies sought in both actions largely overlap. FT Mortgage and Centex each sought the foreclosure of their respective mortgages, the trial court's declaration of the priority of all liens, and the sale of Robinson's property to satisfy the respective liens. The two foreclosure actions filed by FT Mortgage and Centex were thus substantially the same case.

No party, however, asked the trial court to dismiss Centex's action for this or any other reason. Trial Rule 12(H)(1)(b) provides that "[a] defense of . . . the same action pending in another state court of this state is waived to the extent constitutionally permissible . . . if it is neither made by motion under this rule nor included in a responsive pleading or an amend-

9. This related point will be addressed below in our discussion regarding FT Mortgage's

default in Centex's foreclosure action.

ment thereof to be made as a matter of course." It is questionable whether a trial court's lack of jurisdiction over a case because the same action is pending in another state trial court could be validly waived such that two state trial courts could simultaneously entertain the same case. Our Supreme Court suggested in *Pivarnik* that such waiver may be appropriate. 636 N.E.2d at 134 n. 3 (questioning, but not deciding, whether certain parties "may have waived their own defense under Trial Rule 12(B)(8) ... by failing to raise it together with their motions to dismiss...."). In addition, this court addressed a party's argument that a Trial Rule 12(B)(8) objection had been waived for lack of specificity, without questioning the potential implication of such waiver, in *Grand Trunk Western R. Co. v. Kapitan*, 698 N.E.2d 363, 365–66 (Ind.Ct.App.1998). Waivability of the issue, however, would appear to contravene the very purpose of the rule, which is "to prevent two courts from concurrently entertaining the same case." *Crawfordsville Apartment Co. v. Key Trust Co.*, 692 N.E.2d 478, 480 (Ind. Ct.App.1998). And in a case such as this, waiver of the issue of the second court's jurisdiction would defeat the general rule that all claims held against a property should be adjusted in a single action.

We need not decide the question today. It is enough for our purposes to recognize that Centex's simultaneous pursuit of what amounted to the same case that FT Mortgage had already filed in another court was sufficiently irregular to warrant the exercise of the trial court's equitable discretion to set aside the sheriff's sale.

#### b. FT Mortgage's Default in Centex's Foreclosure Action

Centex's decision to pursue a separate simultaneous foreclosure action, and the failure of any party to bring this improper situation to the attention of Superior Court 10 so that Centex's action could be dismissed in favor of the action pending in Superior Court 11, spawned a variety of additional procedural irregularities similarly justifying the setting aside of Centex's foreclosure sale. In particular, as will be more fully discussed below, FT Mortgage's lien was extinguished as a result of FT Mortgage's default in Centex's action. The trial court recognized this fact in its judgment defaulting FT Mortgage and ruling that Centex's mortgage was the most senior lien. Thus, the purported sale of the property as subject to FT Mortgage's lien was improper, and the trial court was entitled to recognize this and to set aside the sale in its equitable discretion.[10]

As noted above, when a party is made a defendant to answer to his interest in a property that is the subject of a mortgage foreclosure action, he must defend his interest in the property, or it may be lost. *See Craighead*, 105 Ind. 72, 4 N.E. 425, 426; *O'Brien*, 133 Ind. 660, 33 N.E. 616, 618. A party's default under such circumstances "ought to be construed as an admission that at the time he failed to appear, as required, he had no interest in the property in question...." *O'Brien*, 133 Ind. 660, 33 N.E. 616, 618. As this Court noted long ago,

[a] proceeding to foreclose a mortgage is essentially a proceeding in rem; and, in actions of this character, which seek to establish a right or interest in the

---

**10.** To the extent that Centex's foreclosure judgment could be set aside as void upon motion by a party with proper standing, this discussion regarding the sale resulting from the foreclosure judgment would necessarily be academic. We include it here to demonstrate the propriety of the trial court's decision to set aside the sale in light of the situation presented.

thing which is the subject-matter of the litigation, all who are made parties defendant thereto, and challenged by the plaintiff therein to assert their rights, are bound to assert every then existing fact which would defeat the plaintiff's action, and are forever concluded by a finding and judgment in favor of the plaintiff as to all such facts, and this has been the law in this state, since the case of *Fischli v. Fischli,* 1 Blackf. 360, 12 Am. Dec. 251.

*Pilliod v. Angola Ry. & Power Co.,* 46 Ind.App. 719, 91 N.E. 829, 832 (Ind.Ct. App.1910). *See also Clay v. Wright,* 629 N.E.2d 857, 860 (Ind.Ct.App.1994) (noting that a party who had been made a defendant in a prior mortgage foreclosure action was estopped from raising any question that was or could have been litigated in the foreclosure action).

■ Centex suggests that FT Mortgage was not strictly obligated to respond to Centex's foreclosure complaint in order to maintain the seniority of its lien. There is authority supporting the general proposition that a junior mortgagee's foreclosure action cannot affect the lien rights of a senior mortgagee. *See Bateman v. Miller,* 118 Ind. 345, 21 N.E. 292, 294 (1889) (recognizing that in general, the title of a purchaser at a foreclosure sale relates back to the date of the foreclosed mortgage). This general rule accounts for the fact that a junior mortgagee's security is the property subject to any existing prior encumbrances, and because the purpose of foreclosure in general is to give the foreclosure sale purchaser essentially the same title to the land as that possessed by the mortgagor when the foreclosed mortgage was executed. *See* GRANT S. NELSON & DALE A. WHITMAN, REAL ESTATE FINANCE LAW § 7.14 (4th ed.2001). Nevertheless, as our Supreme Court recognized in the passage quoted above from *Craighead,* 4

N.E. 425 at 426, it is desirable as a matter of sound public policy that a foreclosure sale of a property subject to a prior mortgage proceed upon an accurate valuation and bring a maximum amount. *See also* NELSON & WHITMAN, *supra,* § 7.12. For this reason, it is appropriate for senior mortgagees to be included as defendants in foreclosure actions brought by junior mortgagees. *See, e.g., Masters v. Templeton,* 92 Ind. 447, 451 (1884) (explaining that senior mortgagors are not necessary parties to a foreclosure action, but may properly be made defendants to answer to their interest). It would make little sense to permit an ostensibly senior mortgage holder to decline to respond to a foreclosure complaint solely on the basis of the seniority of the party's lien. As our Supreme Court stated in *Masters,*

> It follows, as of course, that if any one who has an interest is made a party, he must assert and maintain his interest, since, to hold otherwise, would be to declare that making him a party was merely an unmeaning and empty form. We take it to be very clear that if a person may be properly brought into a case there may, and should be, an adjudication determining his rights. If this be not true, then it is perfectly useless to bring him to court. It seems equally clear that if his rights are to be investigated, it must be all and not merely a part that must receive consideration.

92 Ind. at 450. Thus, once named as a defendant in Centex's action, FT Mortgage was obligated to respond. FT Mortgage did not, and was defaulted.

■ Centex further suggests that even if FT Mortgage was required to answer its complaint, the complaint was drafted so that any default on the part of FT Mortgage would not operate as a forfeiture of FT Mortgage's interest. Centex's foreclo-

sure complaint contained the following allegation pertinent to FT Mortgage's lien:

7. FT MORTGAGE COMPANIES d/b/a MNC MORTGAGE is included herein as a party defendant by virtue of a mortgage dated March 15, 1996 and recorded April 3, 1996 as Instrument No. 96–43735, in the original principal sum of $35,000.00.

(App.9.) Centex requested the following relief:

A. It have and recover of the Defendant, ROBINSON, judgment, in rem, in the principal amount of Twenty–Three Thousand Five Hundred Twenty–Nine and 19/100 Dollars ($23,529.19), plus interest and other charges as specified in the Note from the 11th day of October, 1998, and all expenses incurred by Centex which are secured by the Note and Mortgage, including reasonable attorney fees and costs herein.

B. The Court enter its Order declaring the validity and priority of all liens, interests and claims upon the real estate described hereinabove.

C. The Court enter its Order foreclosing the lien of the Mortgage held by CENTEX, and foreclosing and barring the interest and equity of redemption in the real estate described hereinabove of the defendant, ROBINSON, and all persons claiming through him.

D. The Court enter its Order directing the sale of the subject real estate.

(App.10.) Centex's argument appears to be that its allegation regarding FT Mortgage's lien and its request that the trial court declare the validity and priority of that and all of the other liens, constituted an allegation that FT Mortgage's lien in fact had priority over Centex's lien such that FT Mortgage's default could not defeat its lien. We disagree. As a general rule, a party's default is only conclusive as to those matters that are properly averred in the complaint. *Barton v. Anderson*, 104 Ind. 578, 4 N.E. 420, 422 (1886). As our Supreme Court explained in *Barton*, however, this rule has a particular application in cases like this:

As applicable, however, to a suit to foreclose a mortgage, and other kindred suits in the nature of a proceeding in rem, where a party is made a defendant to answer as to his supposed or possible, but unknown or undefined, interest in the property, we think that, as against him, a default ought to be construed as an admission that, at the time he failed to appear as required, he had no interest in the property in question, and hence as conclusive of any prior claim of interest or title adverse to the plaintiff. Any less rigid rule of construction might, and in many cases doubtless would, defeat the very object properly had in view in making the party a defendant to answer as to his supposed or possible interest in the property involved, to the end that all claims to or against such property might be adjusted by the final judgment or decree, and further litigation thereby avoided.

104 Ind. 578, 4 N.E. 420 at 422. We think that under modern rules of notice pleading, Centex's allegations placed the validity, priority, and amount of FT Mortgage's lien in issue, and were sufficient to require FT Mortgage to answer to whatever interest it had in the property. Having failed to do so, its lien was extinguished.

Centex goes on to assert that the trial court's judgment carefully preserved FT Mortgage's lien despite its default. This is simply not the case. In its judgment, the trial court granted Centex an in rem judgment against Robinson, and entered judgment by default against FT Mortgage. The trial court expressly ruled that Centex's judgment was "a first lien upon the Real Estate as well as upon any proceeds

derived from the Sheriff's sale." In other words, the trial court ruled that Centex's was the most senior lien, demonstrating that the trial court properly understood that Centex's complaint placed the validity and priority of FT Mortgage's lien directly at issue. The trial court ordered the property sold, and directed the proceeds to be distributed to Centex and the other participating lien holders, but not to FT Mortgage. The judgment thus plainly defaulted FT Mortgage and extinguished its lien.

Despite the unmistakable nature of the trial court's judgment with regard to FT Mortgage's lien, the notice advertising the Sheriff's sale evidently indicated that the property was to be sold subject to FT Mortgage's lien. In addition, the Sheriff's deed contained language indicating that the property was subject to FT Mortgage's lien. In light of the fact that the trial court had defaulted FT Mortgage for failure to appear, which had the consequence of the forfeiture of FT Mortgage's lien, the trial court could have concluded that the parties' apparent attempt to circumvent the court's judgment and make the sale subject to FT Mortgage's lien was sufficiently improper to warrant setting aside the sale.

## Conclusion

In conclusion, while the validity of Centex's foreclosure judgment is questionable given the fact that Centex should not have pursued a separate foreclosure action while FT Mortgage's foreclosure action involving the same property and the same parties was pending in another court, the trial court should not have set aside the judgment because Sharaya lacked standing to have it set aside. The trial court, however, did not abuse its broad equitable discretion by setting aside the resulting sheriff's sale. By defaulting in Centex's foreclosure action, FT Mortgage forfeited its lien. The trial court's judgment recog-

nized this, and the purported sale of the property subject to FT Mortgage's lien was improper. These irregularities, and the confusion that resulted, warranted the setting aside of the sale. The money Sharaya paid for the property at the sheriff's sale should therefore be returned to him.

Affirmed.

NAJAM, J. concurs.

ROBB, J., concurs in result in part and dissents in part with separate opinion.

ROBB, Judge, concurs in result in part and dissents in part.

I respectfully dissent. In doing so, I acknowledge the procedural difficulties in this case; most significantly, that there are two inter-related cases, but we have before us on appeal only one. Moreover, not all of the relevant parties are involved in this appeal; FT Mortgage has not appeared to defend its interests. I also acknowledge the procedural missteps in the trial courts: Sharaya did not appeal Court 11's denial of his motion to set aside the judgment and sale from that court. FT Mortgage did not appear in Centex's action in Court 10, either to seek dismissal based upon the existence of its own prior lawsuit or to seek relief from the default judgment, and its failure to do so is in many respects responsible for this procedural quagmire. However, it seems to me that the majority's resolution of this case—letting Centex retain its judgment—rewards Centex for its own failure; that is, its failure to seek redress through FT Mortgage's lawsuit already pending in Court 11 as opposed to instituting its own separate lawsuit in Court 10. Regardless of the procedural difficulties, I believe that Court 10 lacked "jurisdiction of the case" and I would therefore affirm not just that part of the trial court's order setting aside the sher-

iff's sale but also that part setting aside the judgment of foreclosure.

There are three types of jurisdiction: 1) jurisdiction of the subject matter; 2) jurisdiction of the person; and 3) jurisdiction of the particular case. *In re Guardianship of K.T.*, 743 N.E.2d 348, 351 (Ind.Ct.App. 2001). This is clearly an instance in which "jurisdiction of the case" is at issue.[11] Jurisdiction of the case refers to the trial court's right, authority, and power to hear and decide a specific case within the class of cases over which a court has subject matter jurisdiction. *Guardianship of K.T.*, 743 N.E.2d at 351. A judgment rendered by a court which lacks jurisdiction of the case is voidable, and requires a timely objection, or the lack of jurisdiction over the case is considered waived. *Id.* Accordingly, a reviewing court is not obligated to raise sua sponte the issue of jurisdiction of the case. *Id.*

I acknowledge that no challenge was made at the trial court level to the trial court's jurisdiction to hear Centex's particular case. I also acknowledge that we have waived consideration of similar issues on appeal for failure to object. *See Jones v. Marengo State Bank*, 526 N.E.2d 709, 716 (Ind.Ct.App.1988) (appellant contended trial court erred by holding a hearing because a related case had been filed previously in federal court; we held that although he had raised the affirmative defense of the same action pending in another court, his failure to make a motion to dismiss the suit prior to trial waived the issue). Ideally, FT Mortgage would have appeared in Centex's Court 10 action and moved to dismiss the case because of its own case then pending in

Court 11. Unfortunately, it did not. However, when Sharaya became aware of the competing judgments, he moved in both courts to set aside the judgments because Court 10 lacked jurisdiction to enter its July 1999 judgment and order for sheriff's sale. I would consider this, under these unusual and complicated circumstances, to be sufficient to raise the jurisdictional issue and further, I feel that this is clearly a case in which granting "extraordinary relief" would be appropriate.

As our supreme court has stated, it is a "fundamental axiom of law" that courts of concurrent jurisdiction cannot exercise jurisdiction over the same subject at the same time. *State ex rel. American Fletcher Nat'l Bank & Trust Co. v. Daugherty*, 258 Ind. 632, 283 N.E.2d 526, 528 (1972). When an action is pending before an Indiana court, other Indiana courts must defer to that court's authority over that case. *Crawfordsville Apartment Co. v. Key Trust Co. of Florida*, 692 N.E.2d 478, 479 (Ind.Ct.App.1998). Trial Rule 12(B)(8) implements this principle by allowing dismissal of one action on the grounds that the same action is pending in another Indiana court. *Id* at 479–80. Two actions are the "same" for purposes of the Rule if the parties, subject matter, and remedies sought are the same or substantially the same. *Id.* at 480. The determination of whether two actions being tried in different state courts constitute the same action depends upon whether the outcome of one action will affect the adjudication of the other. *Indiana & Michigan Elec. Co. v. Terre Haute Indus., Inc.*, 467 N.E.2d 37,

---

11. Subject matter jurisdiction refers to the power of a court to hear and decide a particular class of cases. *K.T.*, 743 N.E.2d at 351. If a court does not have subject matter jurisdiction, any judgment that it renders is void. *Hoang v. Jamestown Homes, Inc.*, 768 N.E.2d

1029, 1032 (Ind.Ct.App.2002). Because void judgments may be attacked directly or collaterally at any time, the issue of subject matter jurisdiction cannot be waived and may be raised at any point by a party or by the court sua sponte. *Id.*

40 (Ind.Ct.App.1984). An "unseemly conflict of jurisdiction" exists between two courts of concurrent jurisdiction where both exert authority over the same case, so the jurisdiction of the court first acquiring jurisdiction is deemed exclusive. *See State ex rel. Int'l Harvester Co. v. Allen Circuit Court*, 265 Ind. 175, 352 N.E.2d 487, 489 (1976). "As a matter of policy and practicality in the operation of our judicial system, only one court should be able to exercise jurisdiction over a cause of action at any particular time. To hold otherwise would create confusion and chaos in our trial and appellate courts." *State ex rel. Coleman v. Hendricks Superior Court II*, 272 Ind. 40, 396 N.E.2d 111, 112 (1979). This case is a prime example of the "confusion and chaos" our supreme court referenced.

There seems to be no avenue of resolution available to us which would completely clear up the confusion and chaos these parties have created by their procedural missteps and lack of candor to the trial courts. However, I believe by affirming the trial court's order setting aside Centex's judgment, we can come close. Setting aside Centex's judgment in Court 10 and leaving it with the relief it was granted by Court 11, the court in which it should have asserted its rights to begin with, seems appropriate in this case. Centex was named as a defendant in FT Mortgage's original complaint in Court 11 and ostensibly knew of that pending case when it filed its own in an entirely different court. The Court 11 judgment preserved Centex's rights to the proceeds from the sale of the property. Thus, we would not be leaving Centex entirely without relief for the defaulted mortgage by affirming Court 10's judgment in its entirety.

I also dissent from that part of the majority opinion which holds that FT Mortgage's lien was extinguished when it failed to appear in Centex's action. The court in *Globe Acc. Ins. Co. v. Reid*, 19 Ind.App. 203, 47 N.E. 947 (1897), in examining the validity of a default judgment, noted that "[t]his appeal being from a judgment by default, we cannot assume that anything was proved beyond what is shown in the complaint...." 47 N.E. at 950. This was reiterated in *Christ v. Jovanoff*, 84 Ind.App. 676, 151 N.E. 26 (1926), in which the court held in reviewing a default judgment that "it is the general rule that the relief granted to a plaintiff in a case where the defendant has been defaulted cannot exceed that which is demanded in the complaint." 151 N.E. at 30.

Moreover, it is a longstanding rule of construction that allegations, statements, or admissions contained in a pleading are conclusive as against the pleader and a party cannot subsequently take a position contradictory or inconsistent with his pleadings. *See Heck v. Selig*, 134 Ind.App. 336, 188 N.E.2d 118, 120–21 (1963).

Centex's complaint for foreclosure alleged that FT Mortgage was included as a party defendant thereto "by virtue of a mortgage dated March 15, 1996 and recorded April 3, 1996 as Instrument No. 96–43735, in the original principal sum of $35,000.00." Appendix of Appellant at 9. Centex's mortgage was dated October 7, 1996, and recorded on October 15, 1996. *Id.* The relief requested by Centex's complaint was that the court enter an order "declaring the validity and priority of all liens, interests and claims upon the real estate...." Appendix of Appellant at 10. Thus, the allegations of Centex's own complaint acknowledge not only the existence, but also the priority of FT Mortgage's lien, and Centex requested relief consistent with that acknowledgement. FT Mortgage's failure to appear in Centex's foreclosure action may have some import for Centex's action, but I do not believe that

the procedural default is sufficient to extinguish FT Mortgage's lien for all purposes.

Accordingly, I concur in result in that part of the opinion which holds that the trial court properly set aside the sheriff's sale because of the irregularity in Centex's simultaneous pursuit of the same case FT Mortgage had already filed in another court. I dissent from that part of the opinion in which the majority holds that the sale of the property subject to FT Mortgage's lien was improper because the default judgment had extinguished FT Mortgage's lien because I believe the lien remains viable. Finally, I dissent from that part of the majority opinion which reverses the trial court's order setting aside Centex's judgment. I would affirm that order and let the case be worked out in Court 11, as it should have been all along.