**HOUSEHOLD FINANCE,**
Appellant–Defendant,

v.

**Kurt J. NESS and Carolyn Ness,**
Appellees–Interveners.

**No. 35A02–0306–CV–470.**

Court of Appeals of Indiana.

June 30, 2004.

Brooks J. Grainger, The Law Firm of Krisor & Associates, South Bend, IN, Attorney for Appellant.

Wilford A. Hahn, Jeremy K. Nix, Matheny Michael Hahn & Bailey, L.L.P., Huntington, IN, Attorneys for Appellees.

## OPINION

FRIEDLANDER, Judge.

Household Finance Corporation, Inc. (Household) appeals the denial of its Motion to Enjoin Disbursement of Funds and to Set Aside Sale in an action involving a sheriff's sale at which the Appellees, Kurt and Carolyn Ness, purchased a residence. Household challenges the correctness of that ruling as the sole issue upon appeal.

We affirm.

The undisputed facts are that Jeff and Marilyn Satyshur were in default on a real estate mortgage loan issued by GMAC Mortgage Corporation. GMAC held the first mortgage on the subject real estate and Household was a second mortgage holder on the same property. GMAC initiated a foreclosure action that culminated in the entry of a Default Judgment and Decree of Foreclosure in its favor in the amount of $96,743.37, plus interest. Subsequently, upon an Agreed Motion for Admitted Judgment approved by GMAC's attorneys, Household was granted judgment on its mortgage lien in the amount of $59,981.45.

A sheriff's sale of the subject real estate was advertised and was scheduled to occur on March 27, 2003. The sale was to be conducted under the auspices of the Huntington County Sheriff's Department (the Sheriff's Department). The Sheriff's Department had an established procedure for conducting sheriff's sales. A sign posted on a window near the secretary in the front office of the Sheriff's Department described a part of that procedure, i.e., the method of payment, as follows:

SHERIFF'S SALE
1. CASH
2. MONEY ORDER
3. CERTIFIED BANK CHECK
    ONLY

*Exhibit[s]* at 36. In addition to the foregoing requirement with regard to the method of payment, the Department had two other principal requirements: (1) with one exception, every bidder at the sale must be present in person; the lone exception was that first mortgage holders need not be present in person, but could bid by fax; (2) the successful bidder must, immediately after the sale concluded, tender payment in one of the three forms identified on the aforementioned sign.

The sheriff's sale of the subject real estate was advertised in the customary manner. On March 20, 2003, a paralegal with the law firm of Krisor & Associates in South Bend, Indiana faxed a bid on behalf of Household to the Sheriff's Department in the amount of $159,800.00. The faxed bid sheet contained a line for the Sheriff's Department to confirm receipt of the fax. Huntington County Sheriff Kent Farthing received the fax, signed the line acknowledging receipt of the fax, and faxed the acknowledgment to Krisor & Associates. There was no further contact between the Sheriff's Department and Krisor & Associates until the sale was over. The sale was conducted on March 27, 2003, in the lobby of the Huntington County Jail. The only bidders present at the sale were Kurt and Carolyn Ness and a representative of GMAC. GMAC entered an opening bid of $103,381.26. The Nesses raised that bid by one dollar. No other bids were entered, and the Nesses' bid was declared the high bid. The Nesses tendered a certified check in the amount of their bid. The Sheriff's Department delivered a Sheriff's Deed to the Nesses the following day.

On April 2, 2003, Household filed a motion to set aside the sheriff's sale. According to Household, the Sheriff's Department should have notified Household that its March 20 faxed bid would not suffice and that it (Household) was required to be present at the sheriff's sale and be prepared to tender payment in one of the specified manners immediately after the sale was completed. The court denied Household's motion upon the following conclusions of law:

1) The law requires that the successful bidder, (other than the first mortgage holder as plaintiff) to pay [sic] cash at the sale.

2) The law does not require the Sheriff to accept any faxed bids.

3) The law assumes that a representative of the bidder (except, perhaps, the first mortgage holder) will personally appear at the Sheriff's sale.

4) Household's attorneys could easily have avoided problems caused by the Sheriff's sale by contacting Sheriff Farthing ahead of time and inquiring about the bidder's personal appearance at the sale, and requirement of the sale to tender payment by cash or certified check at the sale.

*Appendix of Appellee* at 30. Household appeals that ruling.

■■■ "[A]n action to foreclose a mortgage lien is essentially equitable in nature[.]" *Centex Home Equity Corp. v. Robinson*, 776 N.E.2d 935, 942 (Ind.Ct. App.2002), *trans. denied.* Thus, trial courts have considerable discretion to set aside property sales that result from foreclosure judgments. *Centex Home Equity Corp. v. Robinson*, 776 N.E.2d 935. Trial courts should exercise their authority to set aside a sheriff's sale "where there is a gross inadequacy of price or circumstances showing fraud, irregularity or great unfairness." *Id.* at 942. Trial courts will consider a variety of factors when making this determination, such as the price paid, the effect of procedural irregularities, evidence of mistake or misapprehension, the presence of inequitable conduct, and problems with title to the purchased property. The trial court, in making such decisions, is entitled to "significant deference," and will not be reversed absent an abuse of discretion. *Id.*

■■■ The facts upon which the disposition of this case depends are not in dispute. Both parties acknowledge that Household faxed a bid to the Sheriff's Department prior to the sale. Both parties acknowledge that the rules of the sale required a bidder to be present at the sale and to tender the purchase priced by cash, money order, or certified check immediately after the sale concluded. Both parties agree that Sheriff Farthing acknowledged receipt of the faxed "bid" from Household without informing Household about the rules set forth above. Finally, both parties acknowledge that Household did not attempt any contact with the Sheriff's Department prior to the sheriff's sale, except for sending the fax on March 20. The net effect of those undisputed facts is that Household did not learn the rules of a sheriff's sale in Huntington County, and therefore did not follow them. Reduced to it essence, the question before us is—whose fault was that?

Not surprisingly, the Nesses contend that the fault lies with Household, which made no effort to apprise itself of the proper procedures to follow. Household urges the view that its ignorance stemmed from mistakes made by the Sheriff's Department, the main one being that Sheriff Farthing did not take the opportunity presented by the faxed "bid" to inform Household of the rules, which could have been accomplished by a simple phone call. In support of its argument, Household cites the boilerplate law noted above, most notably the principle that a court may exercise its equitable power to set aside a sheriff's sale if a mistake was made in the course of the sale. *See Centex Home Equity Corp. v. Robinson*, 776 N.E.2d 935. Household identifies and explains the mistake, to which Sheriff Farthing admitted and that constitutes the basis for setting aside the sale, as follows. Farthing testified in a deposition that he took Household's faxed bid of approximately $158,000 and placed it in the sale file. He later received a bid from GMAC of approximately $103,000 and mistakenly assumed it was a lower bid from the same party. In essence, Sheriff Farthing thought that only GMAC had placed a bid. Sheriff Farthing explained

the consequences of that mistake as follows:

Q. Okay. When you went out to sell this particular property had you noticed Krisor & Associates' bid in the file and realized that there were two law firms, would you have started the bidding at the $150,000 figure?

A. When I would have seen that I, I'm not sure what I'd [sic] done because I had not experienced a situation like this before.. I may a had [sic] to make a phone call to, to you.

Q. Okay. But you would have taken some action other than selling the property, uh, to Mr. Ness for $1.00 more than, than the first mortgage bid.

A. I, I probably woulda had to because again this is the first time of this and I, I probably woulda made a phone call to your office to find out, uh, or I may even, yeah, I woulda had to contact you.

Q. Okay. So since—you simply would not have just ignored our bid?

A. No. I, I wouldn't ignored [sic] it if, if I hadn't a, it was an oversight.

Q. Right. So what, what your testimony is today is that you simply made a mistake.

A. Yeah. That's our, that's the best way you could put it.

*Appellant's Appendix* at 17–18. Thus, we can add to the undisputed facts regarding what the Sheriff's Department and Household did and knew concerning sale procedures. The added undisputed facts are that Sheriff Farthing mistakenly believed that there was only one law office submitting bids on behalf of a bidder, when in fact there were two separate bids from two separate bidders. Also, Sheriff Farthing would have attempted to make contact with Household and impliedly would thereby have devised a way to join Household in the bidding procedure. Do these added facts compel the conclusion that Household was not to blame for its absence from the sheriff's sale and therefore the sale was unfair? We hold that they do not.

First, we are not persuaded that Sheriff Farthing's testimony about his mistakes and what he would have done but for those mistakes changes the equities in this case. The first mistake made in this case was not made by Sheriff Farthing, but by Household. It seems to us that, in faxing a bid without any follow-up whatsoever, Household was leaving much to chance. In seeking to set aside the sale, Household focuses almost entirely on what the Sheriff's Department could have done to enlighten Household, and how simple that would have been. Even assuming for the sake of argument that Household is correct in this regard, such does not alter the fact that it would have been just as simple for Household to have accomplished the same thing. It seems, therefore, that this appeal effectively boils down to the question of which party bore the burden of informing Household about the procedures for a sheriff's sale in Huntington County.

We find little precedent in the law to guide us. Sheriff's sales are governed in general by statute. *See* Ind.Code Ann. § 32–29–7–1 et seq. Those provisions set requirements relating to times and days when sheriff's sales may be conducted, as well as establishing rules for advertising and publishing notice of sheriff's sales, I.C. § 32–29–7–3 (West 2002). The procedures themselves seem to be left to the discretion of the individual sheriff's department, subject only to the general requirement that the sale be conducted "in a manner that is reasonably likely to bring the highest net proceeds from the sale after deducting the expenses of the offer and sale." I.C. § 32–29–7–4. It appears to this court that the procedures employed by the Huntington Sheriff's Department complied

with these requirements in that the requisite notice was given, the sale was conducted openly, and requirements concerning payment were calculated to assure prompt, reliable payment.

■ Our review reveals that the controlling statutory provisions do not allocate to the individual sheriff's offices the duty to insure that all interested parties are aware of the procedures and requirements of a sheriff's sale to be conducted by that department. That leads to the conclusion that the burden of apprising potential bidders of that information rests upon the prospective bidders themselves. This is as it should be. While the individual department's procedures should certainly be well defined and matters of public record, the law stops short of assigning to the various departments the duty to proactively insure that prospective bidders become knowledgeable concerning those procedures. That duty lies with the party that has the greatest incentive and ability to attain the knowledge, i.e., the prospective bidder. Our conclusion in this regard is not affected by Sheriff's Farthing's acknowledgement that he labored under a misapprehension as to the identity of the bidder who sent the faxed bid. Nor does it matter that, as he claims, he would have contacted Household before the sale had he known the faxed bidder's true identity. The fact remains that Sheriff Farthing had no legal or equitable *duty* to do so. In any event, Sheriff Farthing's mistake did not constitute fraud or result in an inadequate price, irregularity, or great unfairness. *See Centex Home Equity Corp. v. Robinson*, 776 N.E.2d 935; *cf. also McNeill Family Trust v. Centura Bank*, 60 P.3d 1277 (Wyo.2003) (Wyoming Supreme Court held that a lender's failure to attend a foreclosure sale was not grounds for setting aside the sale, even at a low price).

■ Finally, in reaching our conclusion, we are mindful that this dispute involves the interests of other parties besides Household, most notably the Nesses. Relying upon the legitimacy of the sale, they took possession of the residence and have been living there ever since. This illustrates what is perhaps the most important reason why there is generally a strong public policy in favor of finality of judicial sales. *See Smith v. Fed. Land Bank of Louisville*, 472 N.E.2d 1298 (Ind.Ct.App. 1985). Those public policy considerations are best served if the burden of acquiring information about the required procedures for participating in a sheriff's sale is placed upon the party with the greatest incentive to know them, viz., prospective bidders. In this case, that would be Household. Having determined that the equities do not support Household's petition to set aside the sale, we conclude that the trial court did not err in denying Household's motion.

Judgment affirmed.

KIRSCH, C.J., and SHARPNACK, J., concur.