Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 02 2012, 8:21 am

**CLERK**
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**ALEX R. VOILS, JR.**
Zionsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALEX R. VOILS, JR., VICKI L. VOILS, | ) | |
| | ) | |
| Appellants-Respondents, | ) | |
| | ) | |
| vs. | ) | No. 06A01-1101-MF-66 |
| | ) | |
| EVERHOME MORTGAGE CO., | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |
| | ) | |

APPEAL FROM THE BOONE CIRCUIT COURT
The Honorable J. Jeffrey Edens, Judge Pro Tempore
Cause No. 06C01-0901-MF-42

**February 2, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

The trial court entered a default judgment against Alex R. Voils, Jr., and Vicki Voils because they did not respond to the mortgage company's complaint for foreclosure. The Voilses later had one Sheriff's sale of their home stayed, but another one was scheduled. The Voilses argued that they did not have sufficient notice of this second sale and in any event were told that the sale was not going forward. They therefore requested the Sheriff's sale to be set aside, which the trial court denied. Taking into consideration all the circumstances, we conclude that the trial court did not abuse its discretion in not setting aside the Sheriff's sale. We affirm.

**Facts and Procedural History**

Everhome Mortgage Company filed a Complaint on Note and to Foreclose Mortgage against Alex Voils[1] and Vicki Voils on January 15, 2009. The property at issue was the Voilses' Lebanon, Indiana, home. Although the Voilses were married at the time, by spring 2010 they were going through a divorce. According to the CCS, both Alex and Vicki received "copy service" of the complaint. Appellant's App. p. 4. Because the Voilses did not appear or respond to the complaint, the trial court entered a Decree of Foreclosure by default against them on March 10, 2009.

Everhome filed a Praecipe for Sheriff's Sale in July 2009. The Sheriff's sale was scheduled for October 1, 2009, and both Alex and Vicki knew about the sale. On

---

[1] Alex Voils is a licensed attorney in Indiana, and only his name appears on the cover of the Appellant's Brief as "Attorney at Law." The Appellant's Case Summary, which is signed by both Alex and Vicki, states that the parties initiating the appeal are Alex and Vicki and that they are appearing "pro se." Appellant's Case Summary, Cause No. 06A01-1101-MF-66 (May 25, 2011). Despite Alex's status as an attorney and his designation as such on the Appellant's Brief, we presume that both parties are appealing in a pro se capacity.

September 28, 2009, Alex and Vicki filed an Emergency Petition for Stay of Foreclosure alleging that they "have made contact with the individual at opposing counsel's office who handles the mortgage mitigation and loss. [They] are attempting to resolve the matter without the loss of their home." *Id.* at 91. Alex and Vicki also filed a motion for relief from judgment alleging

> [t]hat the petitioner[s] were served the Original Complaint. Petitioners did not receive any other correspondence, pleading or document until they received the "post card" type notice of the impending sheriff's sale of their home. Having received said notice they have actively pursued resolution of the matter without the need for a sheriff sale.

*Id.* at 93 (formatting altered). They also alleged that the default judgment was hampering their refinance attempts. The following day, the trial court stayed the Sheriff's sale. But then, on November 3, the trial court denied the Voilses' motion for relief from judgment and vacated the order staying foreclosure. *Id.* at 3 (CCS). The court said that Everhome "may proceed with its remedies." *Id.*

Accordingly, Everhome filed a second Praecipe for Sheriff's Sale on November 18. This sale was set for February 4, 2010. Ex. A. The Voilses contend that they did not receive notice of this second sale. But according to Boone County Sheriff Ken Campbell, his office followed the proper procedures in notifying the Voilses of the February 4 sale. That is, notice of the sale was advertised three times in The Lebanon Reporter, Ex. D, and notice of the sale was sent to Alex and Vicki individually at their Lebanon home by certified mail with return receipt requested. According to these return receipts, both Alex and Vicki signed for them on December 11, 2009. Exs. B & C. Vicki claims that the signature is not hers, while Alex does "not recall signing those. [He could not say] that

3

[he] did or didn't. [He didn't] deny[] it either." Tr. p. 58. But Alex said regardless, he did not tell Vicki about the impending sale because of her fragile condition at the time. *Id.* The Voilses posit that a paid worker at their home could have signed for them without their knowledge or permission. In any event, the record shows that on February 1 at the latest, the Voilses knew about the February 4 Sheriff's sale. *Id.* According to the Voilses, Tom Dakich, an attorney who was helping them navigate the murky foreclosure waters, called Everhome on their behalf and was told that the sale would not go forward as scheduled on February 4. *Id.* at 59.

The Voilses, however, did not follow up by filing any motion with the trial court. And neither Alex nor Vicki attended the Sheriff's Sale to see if their property was up for sale. As it turns out, the property was sold at the sale to Fannie Mae, assignee of Everhome, for the balance of the mortgage. Alex said that because he had a "bad feeling," he went to check about the house right after the sale. At this point he learned that the house had in fact been sold. *Id.* A Sheriff's deed was conveyed to Fannie Mae that day. Appellant's App. p. 87. Immediately after the sale, neither Alex nor Vicki filed any motions with the trial court challenging the sale.

On February 11, 2010, Fannie Mae petitioned the trial court for a Writ of Assistance alleging that Vicki and Alex have "refused, and still refuse[] to surrender and vacate said real estate." *Id.* at 90. The trial court issued an order on February 24. *Id.* at 3 (CCS).

On May 17, 2010, more than three months after the sale, Vicki, by attorney Richard Gilroy (who shortly thereafter withdrew his appearance), filed a motion for relief

4

from judgment. This was the first motion either Alex or Vicki filed since the February 4 sale. Vicki alleged that she had been served with only the writ of assistance and not even the original complaint seeking foreclosure (notably, this is contrary to Alex and Vicki's allegation in their September 2009 motion for relief from judgment in which they both admitted receiving the original complaint, *see id.* at 93), but that Alex had been served with several documents. *Id.* at 79, 80. Vicki acknowledged "a previous attempt to set aside the judgment" which failed. *Id.* at 79. She also alleged, "It was and, with hope, is my intent to redeem the home. It was my understanding that we were in the process to do so. We have and had the funding in which to pay the company and/or Fannie Mae." *Id.* She continued, "I was under the impression that the home would not be sold at auction. We were attempting to redeem it." *Id.* at 80. Apparently acknowledging the lateness of her motion, Vicki explained,

> I have not pursued this remedy until now, delayed after receiving the writ of assistance, because there was a pending offer to resolve the matter. I say pending offer in that Mr. Dakich had offered Everhome, via their Attorneys, a cash settlement. There has been no response.
> I must now go forward due to said attorneys having pursued the writ of assistance. We are to be escorted and locked out from my home on **May 18, 2010, at 2:00 p.m. by the Boone County Sheriff** and a representative of the aforementioned attorneys.

*Id.* (formatting altered). Vicki concluded:

> There exist[s] tremendous reason justifying relief. The home represents the entirety of all that has been worked for in both of our lives. We were put in the position resulting in the delinquency through no fault of our own [referring to Alex's medical expenses]. I understand it is not the mortgage company's fault either. Thus I understand we are liable for the costs incurred. All we can do is try to make it right. This certainly appears to me as a layperson to fall within the Rules and [the] Court[']s inherent powers of equity.

5

*Id.* at 81. She therefore asked the trial court to "STAY OUR REMOVAL from our home, set the matter for hearing, [and] *vacate the default judgment as to Vicki Voils . . . .*" *Id.* (emphasis added). The following day, in a CCS entry addressing Vicki's motion, then-trial court Judge Steven David said that he was taking "NO FURTHER ACTION as there is nothing before the Court that would justify any such extraordinary measure at this time." *Id.* at 3. Judge David then recused himself from the case. A new judge, Judge Jeffrey Edens, took over. *See* Tr. p. 6 (Judge Edens explaining that he is pro tem until a permanent judge is appointed by the governor). Judge Edens later clarified that Judge David's May 18, 2010, CSS entry was in fact a denial of Vicki's motion for relief from judgment as of that date. *See* Appellant's App. p. 12 ("To the extent that there is any confusion as to whether or not the Motion for Relief From Judgment filed by Vicki Voils on May 17, 2010 is at issue, the Court determines that that motion was deemed denied by the CCS entry of May 18, 2010.").

Vicki filed for Chapter 13 bankruptcy in June 2010.

Fannie Mae filed a second writ of assistance in October 2010. The trial court issued the writ on November 1, 2010. That same day, Alex, pro se, filed a motion to vacate the writ of assistance and a request for a hearing. A hearing was held on November 17. At the hearing, the main issues argued were (1) Alex and Vicki were not properly served with notice of the February 4 Sheriff's sale and (2) the Sheriff's sale should be vacated based on equitable principles. *Id.* at 15. The trial court issued its order

on January 18, 2011.[2]  After outlining the facts which we have largely addressed above, the trial court made the following conclusions:

## Notice Issue

31) Based on Sheriff Campbell's testimony, notice was reasonably calculated to inform the Defendant's [sic] of the pending Sheriff's sale.
32) By their own admission, both Mr. and Mrs. Voils were aware of the Sheriff's sale date as of February 1, 2010.
33) Neither took any affirmative action to stop the sale based on any issues concerning notice.
34) Neither attended the sale.
35) The Court finds no basis to vacate the Writ of Assistance based on lack of timely notice of the sale.

## Equitable Argument

36) Defendant, Alex Voils, also requests relief based on equitable remedies.
37) He is correct that an action to foreclose a mortgage lien is essentially equitable in nature. *Centex Home Equity Corp. v. Robinson*, 776 N.E.2d 935, 942 (Ind. Ct. App. 2002), *trans. denied*.
38) A court may exercise its discretion to set aside a Sheriff's sale. It should exercise that discretion "where there is gross inadequacy of price or circumstances showing fraud, irregularity or great unfairness." *Id.*
39) Mr. Voils presented no evidence to show gross inadequacy of notice.
40) Mr. Voils does claim that he and Ms. Voils were misled into believing that the sale would not take place. However, the Court finds that it is significant that he did not immediately file a pleading with the Court alleging fraudulent concealment of the sale.
41) Given the history of the case, the Court would have expected that the Defendants would have done so had this issue been significant to them.
42) Defendant's [sic] present no other evidence to support their claim of fraud.
43) The Court does not find a basis to support Mr. Voils' claim of fraud.
44) Mr. Voils also claims irregularity of notice of the Sheriff sale.
45) However, Boone County Sheriff Ken Campbell testified that there was nothing irregular about the notice given to the Defendants. Notice was reasonably calculated to inform the Defendant's [sic] of the sale.
46) Defendants claim that they did not sign the return receipts. Clearly, however, someone signed them.

---

[2] Because the trial court determined that Vicki's May 2010 motion for relief from judgment was not at issue, the court did not make any findings or conclusions about setting aside the default judgment.

7

47) They claim that an employee might have signed for the notice documents.

48) However, they offer no explanation as to why someone signing for the documents on their behalf would not have delivered the documents to them thereafter.

49) In any event, even assuming irregularity, the Defendant's [sic] had actual notice of the sale and did not take any affirmative steps to stop it.

50) The Court does not find a basis to support Mr. Voils' claim of irregularity.

51) Finally, Mr. Voils claims that it is simply unfair for Plaintiff to proceed with foreclosure.

52) The matter has been pending before the Court for two years. The real estate was twice advertised for Sheriff Sale. The first sale date was vacated in order to allow the Defendants time to pursue their Motion For Relief From Judgment, which was ultimately denied.

53) A second Motion for Relief From judgment was also filed by Ms. Voils was [sic] and also deemed denied. Finally Ms. Voils pursued a bankruptcy relief which was ultimately lifted.

54) The Defendant's [sic] have not demonstrated an ability to redeem property, even if the Sheriff's sale would be vacated.

55) The Court believes that this matter has been handled appropriately on behalf of the Plaintiff and that the Defendants have had considerable opportunities to achieve a different result.

56) The Court does not find a basis to support Mr. Voils' claim of great unfairness.

57) The Court finds no basis to vacate the Writ of Assistance based on equitable relief.

58) The Court certainly takes no pleasure in determining the issue in this manner.

59) The Court DENIES the Motion to Vacate Sheriff Sale filed by [Mr. Voils].

60) Plaintiff may pursue and enforce all rights and remedies available to it under applicable law.

*Id.* at 15-18. The Voilses now appeal.

**Discussion and Decision**

As a preliminary matter, we note that Everhome has not filed an appellee's brief.

Under that circumstance, we do not undertake to develop the appellee's arguments.

*Branham v. Varble*, 952 N.E.2d 744, 746 (Ind. 2011). Rather, we will reverse upon an appellant's prima facie showing of reversible error. *Id.*

The Voilses make two arguments on appeal: (1) the trial court erred in denying Vicki's motion for relief for judgment and (2) the trial court erred in not setting aside the Sheriff's sale.

We can readily dispose of the first argument. Alex and Vicki filed a motion for relief from judgment in September 2009 in which they jointly argued that they did not receive many of the documents in this case. The trial court denied this motion in November 2009. Then, Vicki alone filed a motion for relief from judgment in May 2010 in which she argued essentially the same thing, that is, that she was not properly served with many of the documents in this case, including the original complaint.[3] Accordingly, Vicki asked for the default judgment to be set aside as to her only. Everhome argued below that Vicki's May 2010 motion for relief from judgment was "duplicitous and repetitive" of the Voilses' September 2009 motion for relief from judgment which was denied. Appellant's App. p. 25. We agree. Because Vicki essentially re-raised an issue that had already been presented to the trial court and rejected, we find no error in the trial court's ruling that no further action was needed regarding Vicki's motion for relief from judgment.

We now proceed to the heart of this dispute. The Voilses ask us to set aside the Sheriff's sale because of numerous problems.

---

[3] As noted above, the first motion for relief from judgment, which was signed by both Alex and Vicki, alleges that they both had notice of the original foreclosure complaint.

The vacation of a sheriff's sale is committed to the sound discretion of the trial court and not to be disturbed absent a showing of an abuse of that discretion. *Indi Investments, LLC v. Credit Union 1*, 884 N.E.2d 896, 898 (Ind. Ct. App. 2008), *reh'g denied*. The law allows a trial court to take a "commonsense approach" in deciding whether to vacate a sheriff's sale." *Id.* The court takes into consideration all circumstances, such as the inadequacy of the price, the effect of procedural irregularities, inequitable conduct, evidence of mistake or misapprehension, and problems with title. *Id.*

The Voilses first argue that they did not receive proper notice of the February 4 Sheriff's sale. Indiana Code section 32-29-7-3 sets forth the requirements of a Sheriff's sale and specifically requires the sheriff, at least thirty days before the sale, to "serve a copy of the written or printed notice of sale upon each owner of the real estate. Service of the written notice shall be made as provided in the Indiana Rules of Trial Procedure governing service of process upon a person." Ind. Code § 32-29-7-3(d). The Voilses allege that they did not receive notice of the February 4 Sheriff's sale until February 1 when they received a phone call from someone at Everhome. Trial Rule 4.1 provides:

> (A) In General. Service may be made upon an individual, or an individual acting in a representative capacity, by:
>> (1) sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter; or
>> (2) delivering a copy of the summons and complaint to him personally; or
>> (3) leaving a copy of the summons and complaint at his dwelling house or usual place of abode; or
>> (4) serving his agent as provided by rule, statute or valid agreement.

(B) Copy Service to Be Followed With Mail. Whenever service is made under Clause (3) or (4) of subdivision (A), the person making the service also shall send by first class mail, a copy of the summons without the complaint to the last known address of the person being served, and this fact shall be shown upon the return.

Sheriff Campbell testified at the hearing that his office followed proper procedures when notifying Alex and Vicki of the February 4 Sheriff's sale. Tr. p. 35-36. In fact, the record shows that notice was published in The Lebanon Reporter on December 29, 2009, January 5, 2010, and January 12, 2010. Ex. D. The Voilses do not dispute this. In addition, the record shows that Alex and Vicki each signed the return receipts on December 11, 2009, which was more than thirty days before the sale. Although Vicki denies that the signature is hers, Alex was not sure about his signature. He testified at the hearing as follows, "Judge, I saw those, the returns. I do not recall signing those. I cannot tell you that I did or didn't. I'm not denying it either." Tr. p. 58. In response to the Voilses' claim that a hired worker could have signed both return receipts, the trial court noted that the Voilses "offer[ed] no explanation as to why someone signing for the documents on their behalf would not have delivered the documents to them thereafter." Appellant's App. p. 17.

Even assuming irregularity, the record shows that the Voilses had notice of the February 4 Sheriff's sale no later than February 1, 2010, at which point the Voilses say they had Dakich contact Everhome to see if anything could be done. As the trial court noted, the Voilses took no legal steps to stop the sale, and they did not even show up at

11

the sale to protect their position. Any irregularity in the notice is not grounds for setting aside the Sheriff's sale.[4]

The Voilses next argue that because they were "under the impression that the [February 4] sale would not transpire," we should set aside the Sheriff's sale. Appellant's Br. p. 16. The trial court, however, found that there was no merit to this argument because neither Alex nor Vicki immediately filed anything after the Sheriff's sale alleging any sort of misrepresentation or fraud in carrying out the sale. The court reasoned that "[g]iven the history of the case, [it] would have expected that [they] would have done so had this issue been significant to them." Appellant's App. p. 16. In fact, it was not until May 17, 2010, which was more than three months after the sale, that a motion was filed by either party. This was Vicki's motion for relief from judgment based on insufficient service of documents. In addition, the Voilses present no evidence from Dakich, who was the one Everhome allegedly told that the February 4 sale would not go forward as planned. Tr. p. 58-59. The Voilses' belief that the February 4 sale was not going to occur is not a sufficient basis to vacate the Sheriff's sale.

Finally, to the extent that the Voilses argue that it would be unfair not to vacate the Sheriff's sale because of the hardship to them, we echo the trial court's response that this case has been pending since January 2009, with the foreclosure judgment entered in

---

[4] The Voilses rely on *Elliott v. JPMorgan Chase Bank*, 920 N.E.2d 793 (Ind. Ct. App. 2010), in support of their argument that the Sheriff's sale should be set aside because of problems with notice. However, the issue in *Elliott* was whether the *default judgment* should be set aside. Because we found that the default judgment should be set aside according to the catch-all provision of Trial Rule 60(B), we found no reason to address whether the default judgment should be set aside because the homeowners did not receive proper notice of the summons and complaint seeking foreclosure. *Id.* at 796-98. Here, the issue is not whether the Voilses received notice of the original complaint seeking foreclosure. This case had been ongoing and a previous Sheriff's sale had already been stayed.

March 2009. The property was twice advertised for Sheriff's sale. The first sale was stayed in order to allow the Voilses time to pursue their motion for relief from judgment. And during this period of time, they were trying to work out a deal with Everhome to save their home, which never happened. As the trial court found particularly critical, the Voilses have not demonstrated an ability to redeem the property even if the Sheriff's sale were set aside. *See* Appellant's App. p. 17 (Conclusion No. 54); *see also* Tr. p. 71 (Vicki testifying "*I think* that we can satisfy the judgment, the mortgage, whatever it is at this point, through my bankruptcy") (emphasis added), 60 (Alex testifying that they were having difficulty finding someone to buy their house back from Fannie Mae, despite the fact that it allegedly had a lot of equity). Considering all the circumstances, we find that the trial court did not abuse its discretion in not setting aside the Sheriff's sale. We therefore affirm the trial court.

Affirmed.

ROBB, C.J., and NAJAM, J., concur.

13